# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,
        Plaintiff,

v.

BURNS INTERNATIONAL SECURITY
SERVICES CORP., formally known as
BORG-WARNER PROTECTIVE
SERVICES CORP., a Delaware
corporation,
        Defendant.

_____/

CASE NO. 6206

## CIV - DAVIS

### MAGISTRATE JUDGE BROWN



## <u>NOTICE OF REMOVAL</u>

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA:**

Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION.,

f/k/a, BORG-WARNER PROTECTIVE SERVICES CORPORATION., a Delaware

corporation, with its principal place of business in the State of New Jersey[1], gives notice

---

[1]When this matter was first removed to this court (upon what this court determined was a premature record), undersigned counsel stated that the principal place of business of Defendant was the State of Illinois; however, it has since been determined upon development of this record on this issue that Illinois is the principal place of business for Burns International Security Corporation, which is the parent corporation of Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION, the sole defendant in this case. And, regardless, complete diversity exists as the Plaintiff corporation PRESTIGE PROTECTIVE is incorporated in and has its principal place of business in the State of Florida and there is no dispute that the Defendant corporation is a Delaware corporation.

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

of the removal of this cause from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, upon 28 U.S.C. § 1332 diversity jurisdiction grounds.

## PROCEDURAL HISTORY

This cause was filed in the Circuit Court of the 17th Judicial Circuit, in and for Broward County, Florida on November 3, 1999, and was served upon the resident agent for BURNS, by service of a copy of the summons and the complaint, on November 4, 1999. A copy of the summons and complaint, exhibits thereto, and all subsequent pleadings, orders, and court filings (except a notice of hearing and written discovery which is not filed herein pursuant to Local Rule) are attached hereto and incorporated herein by reference.[2] On November 23, 1999, Defendant BURNS filed its original Notice of Removal. At the time of the original Notice of Removal, no other process, pleadings or orders had been filed or served in this matter. Upon Defendant PRETIGE's motion, this Court remanded this action to state court by its December 29, 1999, Remand Order. The Order found that the removal

---

[2]The attachments hereto are as follows: 1) summons, 2) complaint and exhibits to complaint, 3) notice of filing and affidavit of John Moriarty, 4) notice of filing and affidavit of Diana Bligh with exhibited state certificates of authority demonstrating principal place of business, 5) Plaintiff's Motion to Strike Admissions and Order granting Motion, 6) Defendant's Motion for Protective Order and to Stay Substantive Discovery (see Local Rule 7.2 Notice), 6) Notice of Filing in State Court copy of Defendant's Motion to Compel Arbitration and to Dismiss and Reply memorandum in support of Motion to Compel Arbitration (initially filed before this Court under Case no. 99-7561-Civ-Zloch, and then made part of the State court record under notice of filing, 7) Plaintiff's Response in opposition to Motion to Compel Arbitration as filed in this court under Case no. 99-7561-Civ-Zloch and another different memorandum in response to motion to compel arbitration as filed in the state court proceeding (to which this Defendant will separately respond in accordance with Local Rule 7.2). See separate Local Rule 7.2 notice of pending motions.

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

was premature, as the record then before the court did not demonstrate all elements of diversity jurisdiction, to wit: the principal place of business of the Defendant corporation.[3] Since the date of remand, the record has been developed by the attached affidavits of John Moriarty, Vice President, and Diana Bligh, assistant secretary, including copies of corporate filings in multiple states, which conclusively show that Defendant's principal place of business is in the State of New Jersey and is not in the State of Florida.

I.

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, i.e., diversity of citizenship and jurisdictional amount.

As stated on the face of the attached Complaint at paragraph 1, Plaintiff PRESTIGE PROTECTIVE CORPORATION is a corporation incorporated under the laws of the State of Florida and having its principal place of business in the State of Florida. Exhibit A to the Complaint also states that the Defendant corporation, BURNS INTERNATIONAL SECURITY SERVICES CORPORATION, f/k/a Borg-Warner Protective Services Corporation, is a Delaware corporation. Further, the affidavits of John Moriarty and Diana Bligh, served under notice of filing and made part of the record before the State Court,

---

[3]All other elements of diversity appeared on the record as previously removed–that Plaintiff PRESTIGE PROTECTIVE was and is a corporation incorporated in the State of Florida with its principal place of business in the State of Florida; that the amount in controversy exceeded $75,000 exclusive of interest and costs; and that the Defendant is a corporation incorporated in the State of Delaware. There is no dispute as to these elements and these elements appeared on the record as previously removed. But because the court deemed the removal to be premature and because at that time other papers from which it could be ascertained that the principal place of business of Defendant was New Jersey and was not Florida, the record was developed since and is attached hereto as fully developed and now removable. See 28 U.S.C. §1446(b).

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

demonstrate that Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION is incorporated under the laws of the State of Delaware and that it maintains its principal place of business in the State of New Jersey. Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION is not incorporated in State of Florida and does not have its principal place of business in the State of Florida, the State in which Plaintiff PRESTIGE is both incorporated and maintains its principal place of business. The amount in controversy in this case exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and, in fact, the amount in controversy is alleged in the attached Complaint at paragraph 30 to be Three Hundred Thousand Dollars ($300,000).

This is an alleged civil action for damages upon a promissory note, of which the District Courts of the United States have original jurisdiction in accordance with 28 U.S.C. §1332, diversity of citizenship. There is complete diversity of citizenship between the parties and the alleged amount in controversy is alleged to be well in excess of this Court's jurisdictional amount of $75,000.

II.

The time within which Defendant is required to file this Notice of Removal in order to remove this case is set forth under 28 U.S.C. §1446(b):

> "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." (Emphasis added)

-4-

The affidavits, which establish that BURNS INTERNATIONAL SECURITY SERVICES CORPORATION's principal place of business is New Jersey, were executed on January 11, 2000, received by undersigned counsel for Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION on January 12, 2000, and filed as part of the state court record on January 25, 2000. Less than 30 days have passed since the date that Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION first received the paper, specifically the affidavits attached hereto as Exhibit "2", from which it may first be ascertained that this case is removable and less thatn 30 days have passed since the foregoing were made part of the State Court record. This removal is timely in accordance with 28 U.S.C. §1446.

III.

Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION has given written notice of this notice of removal to Plaintiff's counsel and has filed a copy of the notice with the Clerk of the Court of the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, as required by 28 U.S.C. §1446(d).

WHEREFORE, Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION prays that this Court accept the removal of this cause and take jurisdiction over this action for all further proceedings herein.

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

Respectfully submitted,

Sherryll Martens Dunaj
Florida Bar #136707
John L. Urban
Florida Bar No.: 175307
Martens Dunaj Marlowe Davis & Marlowe
201 South Biscayne Boulevard
Miami Center/Suite 880
Miami, Florida 33131
(305) 373-9977
(305) 373-8877 fax

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail this __10__ day of February, 2000 to: **Robert Pasin,** Attorney for Plaintiff, 3300 University Drive, Suite 601, Coral Springs, Florida 33065.

Sherryll Martens Dunaj

IN THE CIRC⸱ ⸱ COURT OF THE
SEVENTEENTH    JDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY
FLORIDA

CIVIL DIVISION                **99018826**
CASE NO. _____

PRESTIGE PROTECTIVE CORP.
Plaintiff,                                                    **14**
vs.

BURNS INTERNATIONAL SECURITY SERVICES CORP.
Defendant.
_____/

**SUMMONS**
(Civil Action)

THE STATE OF FLORIDA
TO EACH SHERIFF OF SAID STATE:                ATTACHMENT / EXHIBIT ____/

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the
complaint or petition in this action on defendant:

BURNS INTERNATIONAL SECURITY SERVICES CORP.  through its registered agent:

CT Corporation System, 1200 Pine Island Road, Plantation, Florida
Each defendant is required to serve written defenses to the complaint or peti-
tion on Plaintiff's Attorney, whose name and address are as follows:

ROBERT PASIN
3300 UNIVERSITY DR.
SUITE 601
CORAL SPRINGS, FL 33065

within 20 days after service of this summons on that defendant, exclusive of the
day of service, and to file the original of the defenses with the Clerk of this Court
either before service on Plaintiff's attorney or immediately thereafter. If a defen-
dant fails to do so, a default will be entered against that defendant for the relief
demanded in the complaint or petition.

NOV 3 - 1999                    ROBERT E. LOCKWOOD

DATED on _____        Clerk of the Court

                                By _____
                                   Deputy Clerk

DEBORAH A. LEWIS

A TRUE COPY
Circuit Court Seal

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,
     Plaintiff,

**99018826**

v.

Case No.

ATTACHMENT / EXHIBIT _2_

BURNS INTERNATIONAL SECURITY
SERVICES CORP., a foreign corporation,
formally known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a foreign corporation,
     Defendant.

COMPLAINT

_____/

## COUNT I-BREACH OF NOTE

COMES NOW the Plaintiff, Prestige Protective Corporation, and brings this action

against the Defendant, Burns International Security Services Corporation, formally known as Borg-

Warner Protective Services Corporation, and alleges:

     1. Plaintiff, Prestige Protective Corporation, (Prestige) is an active Florida corporation,

with its  principal place of business located in Broward county, Florida.

     2. Defendant, Burns International Security Services Corportion (Burns), is a foreign

corporation authorized to do business in the state of Florida and doing business in Broward county,

Florida. Burns maintains an agent in Broward county, Florida.  Burns was formally known as Borg-

Warner Protective Services Corporation (Borg-Warner),  a foreign corporation. Burns is liable for all

obligations of Borg-Warner including the obligations set forth in the promissory note between the

Plaintiff, Gallione, and Borg-Warner which is the subject of this action.

     3.  On or about July 6, 1998, in Broward county, Florida,  the Plaintiff/Prestige and Borg-

Warner entered into an agreement whereby Borg-Warner would purchase the assets of Prestige.  As a

part of that agreement, (referred to in the note as the "letter agreement"), Borg-Warner executed a note in

favor of Prestige promising to pay money to Prestige.  This note is titled "non-negotiable promissory

note", and is attached hereto as exhibit A. The" letter agreement " is attached hereto as exhibit B.

4. Pursuant to the terms of this note Borg-Warner was to make a monetary payment to Prestige on or about July 21, 1999.

5. Borg-Warner and/or Burns failed to make the payment due and therefore is in default and breach of the note.

6. This is an action for damages in excess of $15,000.00. Plaintiff demands trial by jury.

Wherefore, Plaintiff demands judgment against the Defendant in excess of $15,000.00, pre-judgment interest, costs, trial by jury, and such other relief deemed appropriate by the court.

## COUNT II-FRAUD

Plaintiff sues the defendant and alleges:

7. Plaintiff realleges foregoing paragraphs 1-5 as if set forth fully herein.

8. The note requires that the amount due be calculated pursuant to a formula which is set forth in the note and described as "customer retention percentage".

9. This formula purports to rely upon a calculation of the amount of revenues as of the date the note payment was to be due, as compared with an amount set forth in the note ($1,014,000.00).

10. If the difference in these revenues was greater than 20% then the note required no payment.

11. Defendant unilaterally performed calculations which purportedly determined that the difference between the subject revenues was greater than 20% and, therefore, that no payment was due under the note.

12. Plaintiff has requested of defendant that defendant provide copies of the actual account statements, and other materials, which defendant utilized in making these calculations. Defendant has failed, or refused, to provide these materials.

13. Defendant has knowingly and deliberately falsified or manipulated the applicable accounts and revenues so that plaintiff would be unjustly deprived of the appropriate payment due under the note.

14. Defendant has acted with wilfull, wanton, and reckless disregard of plaintiffs rights and interests.

15. Defendant's conduct constitutes a fraud against plaintiff.

16. This is an action for damages in excess of $15,000.00. Plaintiff demands trial by jury.

Wherefore, Plaintiff demands judgment against the Defendant in excess of $15,000.00, pre-judgment interest, costs, trial by jury, and such other relief deemed appropriate by the court.

## COUNT III-BREACH OF DUTY OF GOOD FAITH

### Plaintiffs sues the defendant and alleges as follows:

17. Plaintiff realleges paragraphs 1-5,8,9,10 and 11 above as if fully set forth herein.

18. Defendant owed plaintiff a duty of good faith in performing its obligations under the note.

19. This duty of good faith required that defendant use reasonable efforts to obtain all revenues which could be included in the calculations to the benefit of plaintiff.

20. Subpart (iii) of the note paragraph commencing with "customer retention percentage" provides that plaintiff shall not receive the benefit of revenues attributable "to a customer that at the end of such period had a receivable due to buyer that is more than 30 days past due".

21. Defendant had a duty to use reasonable efforts to obtain revenues which were due before the passing of 30 days from the due date so that these funds would be collected and therefore utilized in the calculation required by the note.

22. Defendant breached this duty and therefore funds which would have been collected with reasonable efforts remained uncollected until after the time limit established by the note had expired.

23.  Plaintiff sustained damages by defendant's breach of this duty in that had defendant used such reasonable efforts to collect funds due on such accounts within 30 days of their becoming due, then the "customer retention percentage" would have exceeded 80% and plaintiff would therefore have been entitled to at least $50,000.00 under the terms of the note.

24.  This is an action for damages in excess of $15,000.00.  Plaintiff demands trial by jury.

Wherefore, Plaintiff demands judgment against the defendant in excess of $15,000.00, costs, pre-judgment interest, trial by jury, and any further relief deemed appropriate by the court.

## COUNT IV- UNCONSCIONABILITY

Plaintiff sues the defendant and alleges:

25.  Plaintiff realleges foregoing pragraphs 1-5 as if set forth fully herein.

26.  The note states "for value received, buyer hereby promises to pay to seller the principal sum of $300,000.00 in the manner described herein".

27.  The note then sets forth a formula which renders the clear obligation of the seller to pay said $300,000.00 illusory. This formula would allow the seller to avoid making any payment whatsoever under the note despite the clear "promise to pay".

28.  The note represents consideration for the purchase of plaintiff's business by defendant.

29.  Defendant has accepted the benefits of its purchase of plaintiff's business and is obligated to pay the full price which was bargained for.

30.  Defendant would receive a windfall if it does not pay plaintiff the sum of $300,000.00 as defendant promised to do as stated in the note.

31.  It it would be unconscionable to allow defendant to retain all of the benefits of the bargain with plaintiff, including the continued accounts of many of plaintiff's original customers which

continue to do business with defendant, without defendant having to pay any sum pursuant to the note.

32. The note purports to allow defendant to withhold from the calculation of "customer retention percentage" account receivables which are more than 30 days past due at the time such percentage was to be calculated. It would the unconscionable to allow defendant to withhold payment from the plaintiff under the note because of accounts which though 30 days past due were ultimately paid or were recovered by defendant from that customer.

33. Defendant, if not liable for the full $300,000.00 which it promised to pay pursuant to the clear terms of the note, should, in the alternative, be liable for that percentage of the $300,000.00 note amount which is equal to the percentage that results from dividing all account revenues, including those which were 30 days past due as of the date of payment called for in the note, by $1,014,000.00.

34. This is an action for damages in excess of $15,000.00. Plaintiff demands trial by jury.

Wherefore, Plaintiff demands judgment against the defendant in excess of $15,000.00, costs, pre-judgment interest, and trial by jury.

ROBERT PASIN
Attorney for the Plaintiff
3300 University Drive, Suite 601
Coral Springs, Florida 33065
954-345-0662
Fla. Bar No. 341312

## NON-NEGOTIABLE PROMISSORY NOTE

This note is issued pursuant and is subject to the terms and conditions of the letter agreement, dated July 6, 1998 (the "Agreement"), by and between Borg-Warner Protective Services Corporation ("Buyer"), a Delaware corporation, and Prestige Protective Corporation ("Seller"). Capitalized terms used herein without definition shall have the meaning ascribed to such terms in the Agreement.

For value received, Buyer hereby promises to pay to Seller the principal sum of $300,000 in the manner described herein. The outstanding unpaid balance of said principal sum shall not bear interest.

On the date that is 15 days after each of the first and second anniversaries of the Closing (or if such date is not a business day, then the next succeeding business day), Buyer shall pay to Seller the lesser of (i) the unpaid principal amount of the Note or (ii) the principal amount, if any, shown opposite the Customer Retention Percentage below:

| Customer Retention Percentage | Principal Amount |
| --- | --- |
| 100 | $150,000 |
| equal or greater than 90 but less than 100 | 100,000 |
| equal or greater than 80 but less than 90 | 50,000 |
| less than 80 | 0 |

Any principal amount of the Note remaining after the date that is 15 days after the second anniversary of the Closing shall be cancelled and such cancellation shall be treated for all purposes as an adjustment to the consideration paid or received under the Agreement. Thereafter, Buyer shall be discharged from its obligations with respect to such principal amount.

"Customer Retention Percentage" means the percentage amount that results from dividing Account Revenues by $1,014,000. "Account Revenues" means the total net service revenues generated by all Customers during the three-month period ending on the month end prior to the most recent anniversary date of the Closing, but shall not include the amount of such net service revenues that is attributable to the provision of services (i) at a price per hour that is greater than the price paid by such Customer as of the Closing, (ii) on a "temporary", "special" or "on call" basis, as such terms are commonly understood in the contract guard industry, (iii) to a Customer that at the end of such period had a receivable due to Buyer that is more than 30 days past due, (iv) on an account that was not a Customer as of the Closing unless (a) such account has been secured by Mr. Richard Gallione, as determined by the President, Gulf States Business Unit of Buyer, (b) such account has entered into a service agreement authorized by such President and (c) no commissions or fees with respect to such revenue are payable under any agreement with Seller or Mr. Gallione, or (v) to a Customer that as of the end of such period had an unresolved claim for loss, liability or other obligation relating to services provided to such Customer prior to the Closing.



Buyer shall prepare and deliver to Seller a reasonably detailed report computing the Account Revenues, the Customer Retention Percentage and the principal amount of any payment due hereunder. Within 5 days after delivery of such report, Seller shall notify Buyer of its concurrence to such determinations or its disagreement with such determinations. In the event that the parties cannot resolve any disagreement as to any amount(s) due under this paragraph within a reasonable period of time, such amount(s) will be determined by Deloitte & Touche LLP, whose fees and expenses will be paid by the non-prevailing party and whose determination will be final and binding.

Notwithstanding the foregoing, at its option, Buyer may prepay the outstanding unpaid principal amount of this Note, in whole or in part, at any time or times and without penalty or premium.

The principal amount of this Note is subject to reduction and offset upon the occurrence of any of the events, and to the extent provided for, in the Agreement. Any notice required to be given under the terms of this Note shall be given in the manner provided for in paragraph 8 of the Agreement.

This Note shall be governed by and construed in accordance with the internal law (and not the law of conflicts) of the State of Illinois. This Note shall not be assigned or transferred by Seller without the express prior written consent of Buyer.

Dated July 6, 1998.


BORG-WARNER PROTECTIVE SERVICES CORPORATION


By: _____
        Brian S. Cooper
        Assistant Treasurer

July 6, 1998

Prestige Protective Corporation
9764 West Sample Road
Coral Springs, FL  33065
Attention: Mr. Richard K. Gallione

Dear Mr. Gallione:

This letter sets forth the agreement by and between Borg-Warner Protective Services Corporation ("Buyer") and Prestige Protective Corporation ("Seller") relating to the assignment by Seller to Buyer of certain contracts ("Contracts") for security officer services provided to customers ("Customers") and the sale and transfer of certain deposits, prepayments, equipment, intellectual property, personal property and other rights.

1.     On the terms and subject to the conditions set forth in this letter, Seller agrees to transfer and assign to Buyer all of its right, title and interest in and to (a) the Contracts, (b) the headquarters office lease ("Real Estate Lease"), (c) claims, deposits, prepayments, refunds, causes of action and rights of recovery, set off or recoupment, and (d) the equipment, intellectual property and personal property listed on the Equipment Schedule ("Equipment") and Buyer agrees to assume all obligations of Seller under the Contracts to furnish services to Customers after the Closing and under the Real Estate Lease to pay rent after the Closing.

2.     The Closing shall take place at 12:00 noon on July 6, 1998 at the offices of Seller or at such other place as mutually agreed by Buyer and Seller. The effective date of the start of security services by Buyer under the Contracts will be as of 12:01 a.m. Eastern Daylight Time, on July 6, 1998 (the "Effective Time"). At Closing Seller shall deliver to Buyer (a) an original copy of each Contract duly executed by the Customer, provided that the Contract with Crowley American Transport, Inc. shall have been modified to eliminate the requirement to provide stowaway security services, (b) an assignment ("Assignment") of the Contracts from Seller to Buyer and a bill of sale relating to the Equipment, in the form attached as Exhibit A, duly executed by Seller, (c) an assignment and consent of landlord to the Real Estate Lease and (d) such other instruments, certificates and other documents as Buyer may reasonably request in order to effect the transactions contemplated by this agreement. At Closing Buyer and Mr. Richard K. Gallione will have entered into a consulting agreement substantially in the form of Exhibit B hereto.

3.     At Closing, in exchange for delivery of the Contracts and Equipment to Buyer, as provided herein, Buyer shall pay to Seller (i) cash in the amount of $1,050,000 payable by wire transfer or

EXHIBIT

B

delivery of other immediately available funds and (ii) a promissory note substantially in the form of Exhibit C hereto in the principal amount of $300,000 ("Note").

4.    Seller represents and warrants to Buyer:

(a)    Seller is a corporation, duly organized, validly existing and in good standing under the laws of the State of Florida. Seller has no subsidiaries. Seller has full power and authority to enter into this agreement and all other agreements, documents and instruments contemplated hereby and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. This agreement constitutes, and each of the other agreements, documents and instruments contemplated hereby to be executed by Seller (when executed and delivered by Seller) will constitute, the legal, valid and binding agreement of Seller, enforceable in accordance with its terms.

(b)    Neither the execution and delivery of this agreement and the other agreements, documents or instruments contemplated hereby, the performance by Seller of its obligations hereunder or thereunder, nor the consummation of the transactions contemplated hereby or thereby will directly or indirectly (with or without notice or lapse of time) (i) contravene, conflict with or result in a violation of any provision of Seller's charter, bylaws or stockholder or director resolutions, (ii) violate any law, statute, regulation, order, decree or other restriction of any government, governmental agency or court to which Seller or any of its assets is subject, (iii) result in the breach of, conflict with, constitute a default under, accelerate or permit the acceleration of the performance required by, or create in any party the right to terminate, modify, exercise a remedy under or cancel the terms of any agreement, lease, license, permit, instrument of indebtedness or other obligation to which any Company or any of their respective assets is subject or (iv) result in the creation of any lien, charge or encumbrance on any of the Contracts or Equipment. Seller does not need to give any notice to, make any filing with, or obtain any authorization, consent or approval of any government or governmental agency in order for the parties to consummate the transactions contemplated hereby.

(c)    Attached as the "Financial Statements Schedule" are (i) the unaudited balance sheets and statements of income and cash flow of Seller as of and for the year ended December 31, 1997, 1996 and 1995 and as of and for the year to date period ended May 31, 1998. Each of the foregoing financial statements, including in all cases the notes thereto, if any, is correct and complete, is consistent with Seller's books and records (which, in turn, are correct and complete), and has been prepared in accordance with generally accepted accounting principles, consistently applied (subject to the lack of footnote disclosure and, in the case of interim financial statements, changes resulting from normal year-end adjustments, which will not be material).

(d)    Seller does not have any obligation or liability (whether accrued, absolute, contingent, unliquidated or otherwise, whether or not known to Seller, whether due or to become due and regardless of when asserted) arising out of any transaction entered into at or prior to the Closing, or any state of facts existing at or prior to the Closing other than: (i) liabilities set forth on the

-2-

balance sheet for the year ended December 31, 1997 (including any notes thereto), (ii) liabilities and obligations which have arisen after the date of such balance sheet, in the ordinary course of business (none of which is a liability resulting from breach of contract, breach of warranty, tort, infringement, claim or lawsuit) and (iii) other liabilities and obligations expressly set forth in Schedule 4(d).

(e)   The Equipment Schedule lists each item of furniture, machinery, motor vehicles (including state of registration and vehicle identification number), security system equipment, office equipment or trade fixture, computer hardware and software, weapons (including serial numbers) and ammunition, inventories, parts and other personal property included among the Equipment. Seller has good and marketable title to all Equipment, free and clear of all liens, charges, encumbrances and security interests. All Equipment is in good condition and repair and is usable in the ordinary course of business subject to normal wear and tear.

Schedule 4(e) sets forth a list and summary description of all computer software programs, source codes, object codes, information systems, program specifications and related documentation and licenses and data used by Seller to provide services to Customers, other than perpetual, paid-up licenses for commonly available software programs ("Software"). Such schedule identifies Software that is owned by Seller and Software that is licensed by Seller. With respect to Software identified as being owned by Seller, (i) all source codes, object codes and source code comments included in such Software are sufficient to the extent reasonably necessary to enable Seller to maintain and modify such Software using persons skilled in the programming language, operating systems and hardware involved, (ii) Seller has sole right, title and interest in and to such Software (including the exclusive right to make, copy, sell, exploit and provide to other the use of such Software and all derivative works thereof) free and clear of all liens, charges, encumbrances and security interests, and (iii) all authors of such Software made his contribution to such Software within the scope of employment with Seller as "work made for hire." With respect to Software identified as being licensed by Seller, Seller is not in violation of any license, sublicense or agreement. All actions and modifications necessary for the continued effective use of the Software after December 31, 1999 have been taken or made.

(f)   Schedule 4(f) sets forth the following information with respect to each Customer: (A) the account number; (B) the rate charged for; (C) the nature and amount of services being provided to, the Customer; (C) the date upon which Seller commenced furnishing services to the Customer; (D) the billed amount (net of sales taxes) to the Customer during the three calendar months ending May 31, 1998; (E) the expiration date of the current Contract for the Customer; and (F) the receivable aging for the Customer. Seller does not have knowledge of any intention of, or threat by, any Customer to terminate the services currently provided by Seller to it as a result of the consummation of the transactions contemplated hereby or for any other reason. Seller has made available to Buyer a correct and complete copy of each Customer file maintained by it and each contract and other written agreement or understanding that Seller has with each Customer.

-3-

Each Contract is valid, binding and in full force and effect and will continue to be valid, binding and in full force and effect on identical terms following the Closing, without default or breach by any party. No event has occurred on the part of the Seller which with notice or lapse of time would constitute a default or breach under any Contract, nor has any party been threatened with any default or breach under any Contract.

(g)    All accounts receivable from Customers will have been billed on or before July 13, 1998 for services rendered prior to Closing. Seller has not billed any Customer for services rendered or to be rendered after the Effective Time. No Customer is delinquent by more than 30 days in the payment of any invoice rendered to it by Seller, nor is Seller in default or alleged to be in default under any obligation to any Customer, nor has any Customer expressed dissatisfaction or otherwise indicated any problem with respect to the security officer services currently being provided by Seller.

(h)    Schedule 4(h) sets forth as of the date hereof the following information with respect to all active employees employed by Seller: name, social security number, job function, office location and status of security guard license and weapons permit. Seller has conducted pre-employment background and character investigations with respect to all of its employees and no current employee has been convicted of a misdemeanor or felony or is suspected by Seller's management of appropriating any property of Seller or any Customer. Seller has made available to Buyer correct and complete files of investigations relating to any unresolved misappropriation of property.

There are no collective bargaining agreements and no labor union representatives covering any of Seller's employees. Seller is not involved in or threatened with, any labor dispute, arbitration, lawsuit or administrative proceeding relating to labor matters involving their employees. There are no charges or complaints involving any federal, state or local civil rights enforcement agency or court.

Seller has complied in all respects with all laws, rules and regulations relating to employment, equal employment opportunity, nondiscrimination, immigration, wages, hours, benefits, collective bargaining, payment of social security, unemployment and other similar taxes, occupational health and safety, and plant closing. Seller is not liable for the payment of any compensation, damages, taxes, fines, penalties or other amounts, however designated, for failure to comply with any of the foregoing laws, rules and regulations.

(i)    Schedule 4(i) lists all "employee benefit plans" (as that term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended "ERISA") ("Benefit Plans") that Seller maintains or to which it contributes for the benefit of any current or former employee. The Benefit Plans comply in form and in operation with all applicable requirements of law, including ERISA and the Code. No liability to the Pension Benefit Guaranty Corporation, Internal Revenue Service or United States Department of Labor exists or is expected to be incurred with respect to any Benefit Plan. Seller does not contribute, nor is it required to contribute, to any

-4-

"multiemployer plan" (as defined in Section 3(37) of ERISA). Seller has not completely or partially withdrawn from any multiemployer plan so as to result in any liability under Section 4201 of ERISA.

There are no actions, suits or claims pending or threatened with respect to any Benefit Plan. No Benefit Plan that is a pension plan (as defined by Section 3(2) of ERISA) ("Pension Plan") has incurred any "accumulated funding deficiency" within the meaning of ERISA or the Code, whether or not waived, and full payment has been made of all amounts required under each Pension Plan to be made prior to the Closing. The Pension Plans have no unfunded liability.

There has been no reportable event (within the meaning of Section 4043 of ERISA) or any event or condition that represents a risk of termination of any Pension Plan by the Pension Benefit Guaranty Corporation under circumstances that could reasonably result in liability.

All premiums or other payments for all periods ending on or before the Closing have been paid with respect to each Benefit Plan that is a welfare plan (as defined by Section 3(1) of ERISA).

Seller is not party to any (A) severance agreement, or any policy, program or guidelines obligating it to pay severance benefits or (B) employment contract or consulting agreement obligating it to pay benefits to individuals covered under such contract or agreement.

Seller has delivered to Buyer correct and complete copies of (A) the plan documents and summary plan descriptions, (B) the most recent determination letter received from the Internal Revenue Service, (C) the most recent Form 5500 (or 5500-C) Annual Report, including any schedule or attachment thereto, and (D) all related trust agreements, insurance contracts and other funding arrangements which implement each Benefit Plan.

(j)     Schedule 4(j) sets forth all licenses, permits, certificates of necessity, registrations, approvals and authorizations ("Licenses") necessary to provide service under the Contracts and to own the Equipment and with respect to each License sets forth information concerning the issuer, the duration, the holder, the office location and any limitation, restriction or condition that limits their full operation. The Licenses are in full force and effect and no suspensions, cancellations or claims are pending or threatened. The Licenses are unimpaired by any act or omission of Seller.

(k)     Seller does not own any parcel of real estate. Schedule 4(k) sets forth the following information with respect to each parcel of real property leased or subleased to Seller: (A) the name and address of the lessor and location of the property, (B) amount of lease payment and (C) duration of leasehold interest (including extensions). Seller has delivered to Buyer correct and complete copies of the leases and subleases (as amended to date and as proposed to be amended) listed on the such Schedule. With respect to each such lease and sublease (A) the lease or sublease is valid, binding and in full force and effect, (B) the lease or sublease will continue to be valid, binding and in full force and effect on identical terms immediately following the Closing, (C) Seller has not assigned, transferred, conveyed, mortgaged, deeded in trust or encumbered any

interest in the leasehold or sublesshold, (D) all facilities leased or subleased thereunder have received all approvals of governmental authorities required in connection with the operation thereof and have been operated and maintained in accordance with applicable laws, rules and regulations, and (E) Seller is not in breach or default of any payment term and no event has occurred which, with notice or lapse of time, would permit termination, modification or acceleration under the lease or sublease.

(l)   Schedule 4(l) lists all patents, trademarks, service marks, trade names, brand names, copyrights and other proprietary rights and applications, licenses (other than licenses implied by the sale of a product and perpetual, paid-up licenses for commonly available software programs under which Seller is the licensee) or rights for the foregoing used in the conduct of Seller's business. Such Schedule identifies each such proprietary right that any third party owns and that Seller uses pursuant to license or agreement. Seller has not received any notice of infringement, misappropriation or conflict from any third party with respect to such proprietary rights and is not infringing, misappropriating or otherwise in conflict with any proprietary rights of any person.

(m)   Neither Seller nor any director, officer, agent or employee of Seller has directly or indirectly (i) made any contribution, gift, bribe, payoff, kickback or other payment to any person or entity, private or public, to obtain favorable treatment in securing or conducting business or (ii) established or maintained any fund or asset that has not been recorded in the books and records of Seller.

(n)   Seller is not in violation of any law or any judgment, award, rule, regulation, order, decree or writ, and has not received notice of any such violation. Seller has not taken any action, or failed to take any action, under the requirements of any law, rule or regulation, which action or failure will or may, in any way, preclude or prevent Buyer from providing services to the Customers or operating after the Closing in the same manner as theretofore provided or operated by Seller.

(o)   The Note is being acquired by Seller solely for its own account, with no view to any distribution thereof in violation of the Securities Act of 1933, as amended ("Securities Act"), or the applicable securities laws of any state. Seller understands that the Note has not been registered under the Securities Act or the securities laws of any state and may not be sold or otherwise transferred unless it is registered under the Securities Act and any applicable state securities laws or unless an exemption from such registration is available. Seller acknowledges that, in connection with its acquisition of the Note, it has been given the opportunity to make inquiries of officers of Buyer and to obtain such additional information from Buyer as Seller deemed relevant to its investment decision.

5.   As additional consideration for Buyer entering into this Agreement, Seller promises and agrees that it shall not (i) for a period of five years commencing as of the Closing, directly or indirectly own, become interested in, or become involved in any manner whatsoever, in any business activity which is similar to or competitive with the business of providing security officer services in the counties of Palm Beach, Broward and Dade in the State of Florida; (ii) solicit or

-6-



hire any person employed by Seller at any time during the 12-month period immediately prior to Closing, and hired or offered employment by Buyer at or after the Closing or (iii) solicit directly or indirectly any Customer to be a customer of security services of any entity other than Buyer.

Seller agrees that the remedy at law for any breach, or threatened breach, of any of the provisions of this paragraph 5 will be inadequate. Seller agrees that Buyer and its subsidiaries and affiliates shall, in addition to any other rights or remedies which Buyer and its subsidiaries and affiliates may have, be entitled to (i) such equitable and injunctive relief as may be available from any court of competent jurisdiction to restrain Seller from any violation of such provisions and (ii) reimbursement of Buyer and each such subsidiaries' and affiliates' attorneys' fees and costs and expenses in enforcing its and their respective rights pursuant to paragraph 5 hereof.

6.  Buyer does not assume or agree to pay, perform or discharge any liability of Seller to the Customers, Seller's employees or any other third party, except that Buyer shall perform the services under the Contracts from and after the effective date set forth in paragraph 2 hereof.

All of the representations and warranties set forth in this letter will survive the Closing and continue in full force and effect, notwithstanding any examination made for or on behalf of any of the parties hereto, the knowledge of any officer, director, employee or agent of any of the parties hereto or the acceptance of any certificate or opinion. Seller agrees to indemnify and hold Buyer, its parents (direct and indirect) and affiliates and its and their officers, directors and employees (the "Indemnitees") harmless from and against and in respect of the amount of, and to defend against, any loss, liability, damage, claim or expense (including reasonable legal expenses and costs and taking into account the time value of such amounts) (collectively, the "Losses") resulting from, arising out of, relating to, in the nature of or caused by (i) the breach of any representation or warranty contained in paragraph 4, (ii) the breach of any covenant or agreement of Seller contained herein, (iii) any claim or cost incurred with respect to any obligations to pay any broker's or finder's fees or any other fee or commission incurred by Seller, or (iv) any obligation or liability of Seller or any of its Affiliates which is not specifically assumed by Buyer hereunder, including any such obligation or liability imposed on Buyer by process of law as a successor to the business of Seller (including under any bulk transfer laws of any jurisdiction). The foregoing indemnification provisions are in addition to, and not in derogation of, any statutory, equitable or common law remedy any party may have for breach of representation, warranty or covenant.

Any liability under this paragraph 6 of Seller to Buyer may be offset by Buyer against the principal amount of the Note by notifying Seller.

7.  Seller agrees that, at the Closing and at any time thereafter, at the request of Buyer it shall take all action reasonably necessary to assist Buyer in exercising its rights under the Contracts, including delivery to Buyer of the files, books of account and records relating to the Contracts and the records of employees of Seller who are hired by Buyer and become employees of Buyer at the Closing.

-7-

Seller agrees that it will not, from and after the Closing, either directly or indirectly, disclose or use any trade secrets, customer lists and other secret, proprietary or confidential information relating to any Customer or Contract, except with the prior consent of Buyer.

8.      All communications required or permitted to be given hereunder shall be in writing and shall be sent by express mail service that provides for confirmation of delivery, telecopy, telefax or other electronic transmission to the extent receipt is confirmed, or mailed first class, registered or certified mail, addressed as follows: If to Buyer, then to Borg-Warner Protective Services Corporation, 200 South Michigan Avenue, Chicago, Illinois 60604, attention Treasurer, with a copy to General Counsel; if to Seller, then to the address listed on the first page of this Agreement.

8.      This letter shall be governed by and construed in accordance with the internal law (and not the law of conflicts) of the State of Illinois.

9.      This letter (and/or any rights hereunder) may not be assigned by Seller. This letter (including the documents referred to herein) constitutes the entire agreement between the parties and supersedes any prior understandings and agreements between the parties relating to its subject matter. This letter shall not confer any rights or remedies upon any person other than the parties hereto.

If the foregoing correctly sets forth the understanding and agreements with respect to the transactions contemplated hereby, please execute the enclosed copy of this letter in the space provided below and deliver it to the undersigned. This letter does not constitute an offer and will become effective only when Buyer and Seller have executed it.

Very truly yours,

BORG-WARNER PROTECTIVE SERVICES CORPORATION

By: _____
            Brian S. Cooper
            Assistant Treasurer


AGREED AND ACCEPTED AS OF THE DATE
FIRST ABOVE WRITTEN:

PRESTIGE PROTECTIVE CORPORATION
By: _____
Its:  PRESIDENT, CEO

-8-

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. 99-018826

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,

        Plaintiff,

v.

BURNS INTERNATIONAL SECURITY
SERVICES CORP., a foreign corporation,
formerly known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a foreign corporation,

        Defendant.

_____/



ATTACHMENT / EXHIBIT 3

## DEFENDANT BURNS INTERNATIONAL'S NOTICE OF FILING AFFIDAVIT

    Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION, by its undersigned counsel, hereby files the affidavit of John Moriarty, in order to establish the location of Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION's principal place of business. This affidavit is filed in support of the removability of this claim, in order to preserve this claim for the proper arbitration forum and without waiving the arbitrability of this claim.

Martens Dunaj Marlowe Davis & Marlowe

Case No.: 99-018826

Respectfully submitted,

John L. Urban
Florida Bar No.: 175307
Martens Dunaj Marlowe Davis &
Marlowe
201 South Biscayne Boulevard
Suite 880, Miami Center
Miami, Florida 33131
(305) 373-9977

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail and fax this 25ᵗ day of January, 2000 to: **Robert Pasin,** Attorney for Plaintiff, 3300 University Drive, Suite 601, Coral Springs, Florida 33065.

John L. Urban

Martens Dunaj Marlowe Davis & Marlowe

Affidavit of John Moriarty

## <u>AFFIDAVIT OF JOHN MORIARTY</u>

STATE OF NEW JERSEY
COUNTY OF MORRIS

Before me the undersigned authority appeared, who being duly sworn, states the following:

1.    I, John Moriarty, am Vice President of Burns International Security Services Corporation, formerly known as, Borg-Warner Protective Services Corporation. This affidavit is made upon my personal knowledge and upon the books and records of Burns International Security Services Corporation made and kept under my supervision and control.

2.    I am an attorney licensed to practice law in the State of New Jersey. I am counsel for and Vice President of Burns International Security Services Corporation, which is incorporated in the State of Delaware and maintains its principal place of business in the State of New Jersey.

3.    Burns International Security Services Corporation does not maintain its principal place of business in Florida.

4.    My office is located in Parsippany, New Jersey, the headquarters for Burns International Security Services Corporation. All accounting, payroll, purchasing, communications, corporate-wide policy implementation, and other coordination and control activities for Burns International Security Services Corporation's operations in all 50 states, Washington D.C., and other countries are conducted from Parsippany, New Jersey.

5.    Burns International Security Services Corporation is in the business of providing private contract security services to businesses and governmental entities throughout the United States and Canada. The Corporation's center of operations in New Jersey is the nerve center for its approximately 280 offices in 49 different states.

FURTHER AFFIANT SAYETH NAUGHT.

JOHN MORIARTY
VICE PRESIDENT
BURNS INTERNATIONAL SECURITY
SERVICES CORPORATION, f/k/a, BORG-
WARNER PROTECTIVE SERVICES
CORPORATION

Affidavit of John Moriarty

BEFORE ME, the undersigned authority, appeared this day _//_____

_____; who swears and deposes that he has read the forgoing affidavit and that the same

is true and correct to the best of his knowledge and belief.

Sworn to and subscribed before me this _//___ day of _January_, 2000.

_____
Notary Public
State of New Jersey

**JUNE GUIDA**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires Mar. 24, 2004**

_____
Print, Type or Stamp Commissioned


_____
Commission Number


Personally known OR Produced Identification

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. 99-018828

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,

        Plaintiff,

v.

BURNS INTERNATIONAL SECURITY
SERVICES CORP., a foreign corporation,
formerly known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a foreign corporation,

        Defendant.

_____/



**ATTACHMENT / EXHIBIT** ___4___

## DEFENDANT BURNS INTERNATIONAL'S NOTICE OF FILING AFFIDAVIT

Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION, by its undersigned counsel, hereby files the affidavit of Diana W. Bligh, with attachments, in order to establish the location of Defendant BURNS INTERNATIONAL SECURITY SERVICES CORPORATION's principal place of business. This affidavit is filed in support of the removability of this claim, in order to preserve this claim for the proper arbitration forum and without waiving the arbitrability of this claim.

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida

Affidavit of Diana W. Bligh

## AFFIDAVIT OF DIANA W. BLIGH

STATE OF ILLINOIS
COUNTY OF COOK

Before me the undersigned authority appeared, who being duly sworn, states the following:

1.    I, Diana W. Bligh, am Assistant Secretary of Burns International Security Services Corporation, formerly known as, Borg-Warner Protective Services Corporation. This affidavit is made upon my personal knowledge and upon the books and records of Burns International Security Services Corporation made and kept under my supervision and control.

2.    Burns International Services Corporation, the parent company of Burns International Security Services Corporation, is incorporated in the State of Delaware and maintains its principal place of business in Illinois, Burns International Security Services Corporation is a wholly owned subsidiary of Burns International Services Corporation. Burns International Security Services Corporation is incorporated in the State of Delaware and maintains its principal place of business in New Jersey at Two Campus Drive, Parsippany, New Jersey 07054.

3.    Burns International Security Services Corporation does not maintain its principal place of business in the State of Florida.

4.    Burns International Security Services Corporation maintains its corporate headquarters and principal place of business in the State of New Jersey. The corporate offices in Parsippany, New Jersey are the center of operations for coordinating the daily activities of the entire corporation, including its accounting, payroll, purchasing, and communications functions. Implementation of Burns International Security Services Corporation's corporate-wide policy occurs in New Jersey.

5.    The Burns International Security Services Corporation center of operations in New Jersey is the sole headquarters and nerve center for its approximately 280 offices in 49 different states.

6.    As some persons who are officers of the parent, Burns International Services Corporation, are also officers of the subsidiary, Burns International Security Services Corporation. Burns International Security Services Corporation officers are located in both Chicago, Illinois and Parsippany, New Jersey. However, Burns International Security Services Corporation's principal place of business and headquarters is in Parsippany, New Jersey. See copies of state filings, attached hereto as Exhibit "1", designating Burns International

Affidavit of Diana W. Bligh

Security Services Corporation's principal office or place of business as Parsippany, New Jersey.  See also Burns International Security Services Corporation data sheet, attached hereto as Exhibit "2".

FURTHER AFFIANT SAYETH NAUGHT.

DIANA W. BLIGH
ASSISTANT SECRETARY
BURNS INTERNATIONAL SECURITY
SERVICES CORPORATION, f/k/a, BORG-
WARNER PROTECTIVE SERVICES
CORPORATION

BEFORE ME, the undersigned authority, appeared this day Diana W. Bligh, who swears and deposes that she has read the forgoing affidavit and that the same is true and correct to the best of her knowledge and belief.

Sworn to and subscribed before me this __11th__ day of __January__, 2000.

Notary Public
State of Illinois

OFFICIAL SEAL
CECILIA M. KURTZWEIL
Notary Public, State of Illinois
My Commission Expires 09/09/01

Print, Type or Stamp Commissioned

450118

Commission Number

Personally known OR Produced Identification



*PAUL D. PATE*

*Secretary of State*
*State of Iowa*

# APPLICATION FOR
# AMENDED CERTIFICATE
# OF AUTHORITY

66022

**TO THE SECRETARY OF STATE OF THE STATE OF IOWA:**

Pursuant to section 1504 of the Iowa Business Corporation Act, the undersigned corporation applies for an amended certificate of authority to transact business in Iowa, and states:

1. The name of the corporation is <u>Borg-Warner Protective Services Corporation</u>

   and the name the corporation uses in Iowa if different than the real name is

   _____

   The corporate name has been changed to <u>Burns International Security Services Corporation</u>

2. The state [or foreign country] of incorporation on the records of the Secretary of State of Iowa is

   <u>Delaware</u>

   The state [or foreign country] of incorporation has been changed to <u>No Change</u>

3. The duration of the corporation on the records of the Secretary of State of Iowa is <u>Perpetual</u>

   The duration has been changed to <u>No Change</u>

4. The date of incorporation of the corporation was <u>December 20, 1982</u>

5. The street address of its principal office is

   address <u>Two Campus Drive</u>

   city, state, zip <u>Parsippany, New Jersey  07054</u>

6. The street address of its registered office in Iowa and the name of its registered agent at that office:

   name <u>C T Corporation System</u>

   address <u>2222 Grand Avenue</u>

   city, state, zip <u>Des Moines, Iowa  50312</u>

7. The names and business addresses of its current directors and officers:

   name <u>See attached list of directors and officers</u>

   address _____

   city, state, zip _____

635-0114

④     000498



EXHIBIT

(IOWA - 1364 - 11/1/96)

Name _____

Address _____

City, state. zip _____

Name _____

Address _____

City, state, zip _____

*[Please attach additional pages if needed]*

8. A certificate of existence, or a document of similar import, duly authenticated within 90 days prior to the date of this application, by the official having custody of corporate records in the state or country of incorporation, accompanies this application.

9. Signature _____

   Type or print name and title <u>Diana W. Bligh, Assistant Secretary</u> _____

**NOTES:**

1. The filing fee is $100.00. Make checks payable to SECRETARY OF STATE.

2. The document is to be signed by the chairperson of the board, the president, or other officer of the corporation. If directors have not been selected, the document is to be signed by an incorporator. If the corporation is in the hands of a court appointed fiduciary, the document is to be signed by the fiduciary. A copy of a signature is acceptable for filing. Verification is not required.

3. One copy of the document is to be delivered to the Secretary of State for filing.

4. The effective time and date of the document is the later of the following:
   a. the time of filing on the date it is filed;
   b. the time specified in the document on the date it is filed;
   c. the time and date specified in the document, not later than 90 days after the date it is filed.

SECRETARY OF STATE

Corporations Division

Hoover Building, 2nd Floor

Des Moines, Iowa 50319

Phone: 515/281-5204

FAX: 515/242-5953

000499

MICHIGAN DEPARTME    OF COMMERCE - CORPORATION    .D SECURITIES BUREAU

| Date Received | | ADJUSTED PURSUANT TO TELEPHONE AUTHORIZATION | (FOR BUREAU USE ONLY) |
|---|---|---|---|
| MAY 1 3 1999 | | | |

**FILED**

MAY 1 3 1999

Administrator
CORP., SECURITIES & LAND DEV. BUREAU

EFFECTIVE DATE:

Name

517-663-2525 Ref #93081
Attn: Cheryl J. Bixby
MICHIGAN RUNNER SERVICE
P.O. Box 266                          Zip Code
Eaton Rapids, MI  48827

Document will be returned to the name and address you enter above

# AMENDED APPLICATION FOR CERTIFICATE OF AUTHORITY TO TRANSACT BUSINESS IN MICHIGAN
## For use by Foreign Corporations
(Please read information and instructions on the last page)

Pursuant to the provisions of Act 284, Public Acts of 1972, the undersigned corporation executes the following Amended Application:

1. The name of the corporation is: Borg-Warner Protective Services Corporation

2. If the name in Item 1 was not available for use in Michigan, the qualifying assumed name adopted when obtainin the Certificate of Authority is:

3. The identification number assigned by the Bureau is:  6 / 5 - 7 / 9

4. It is incorporated under the laws of Delaware

5. The corporation was authorized to transact busines in Michigan on the 29th day of December , 19 82

6. The period of its duration (corporate term) is Perpetual

7. If the name of the corporation has changed, its new name is:

Burns International Security Services Corporation

The effective date of this name change was the 4th day of May , 19 99 and the name change was made in compliance with the laws of the jurisdiction of its incorporation.

8. Complete this item only if the new name in Item 7 is not available for use in Michigan. The qualifying assumed name of the corporation to be used in all its dealings with the Bureau and in the transaction of its business in Michigan is:

If the qualifying assumed name in Item 2 has changed, the new name is:

10. The address of its registered ice in Michigan is:

c/o The Corporation Company, 30600 Telegraph Road, Bingham Farms , Michigan 48025
(Street Address)                                    (City)                                    (ZIP Code)

The mailing address of the registered office in Michigan, if different than above, is:

_____ , Michigan _____
(Street Address or P.O. Box)                        (City)                                    (ZIP Code)

The name of the resident agent at the registered office is: The Corporation Company

The resident agent is an agent of the corporation upon whom process against the corporation may be served.

11. The address of the main business or headquarters office of the corporation is:_____

Two Campus Drive, Parsippany, New Jersey   07054
(Street Address)                              (City)                    (State)          (ZIP Code)

The mailing address if different than above is:

c/o Borg-Warner Security Corp., 200 South Michigan Ave., Chicago, Illinois   60604
(Street Address)                              (City)                    (State)          (ZIP Code)

12. If the business the foreign corporation proposes to do in this State is to be enlarged, limited, or otherwise changed, the specific business which the corporation is to transact in Michigan is as follows:

No Change

The corporation is authorized to transact such business or conduct affairs in the jurisdiction of its incorporation

13. The total authorized shares of the corporation are:____ 100 common

The effective date of the stock change was the ___N/A___ day of _____ , 19____

For year ending . _____ the apportionment percentage from the most recently filed Single Busines

Tax return is: _____

Signed this 7th day of ___May___ , 19 99 .

By _Diana W Bligh_
(Signature)

Diana W. Bligh                          Assistant Secretary
(Type or Print Name)                     (Type or Print Title)

(MICH. - 67)

CHECK APPROPRIATE STATUTE:

[x] Title 14A:13-6 New Jersey Business Corporation Act (File in DUPLICATE)

[ ] Title 15A:13-6 New Jersey Nonprofit Corporation Act (File in TRIPLICATE)

**APPLICATION FOR AN AMENDED CERTIFICATE OF AUTHORITY**
(For use by Foreign Profit and Nonprofit Corporations)

Indicate if amending:  [x] Corporate Name   [ ] Business / Activities

Original Corporate Name: Borg-Warner Protective Services Corporation

Pursuant to the provisions of the appropriate Statute, checked above, of the New Jersey Statutes, the undersigned corporation hereby applies for an Amended Certificate of Authority, and for this purpose certifies to the following:

1. Name of Corporation: Burns International Security Services Corporation

2. Corporation Number: 0100183914

3. State and Date of Foreign Incorporation is: Delaware, December 20, 1982

4. Date of Authorization: December 20, 1982

5. The Period for Which the Corporation is to Exist is: Perpetual

6. The Address of its Main Office or Headquarters is:

Two Campus Drive
(Street and Postal Designation, if applicable)

Parsippany                    New Jersey              07054
(City)                         (State)                  (Zip)

7. The Name and Address of its Registered Agent in New Jersey is:

The Corporation Trust Company
(Agent's Name)

820 Bear Tavern Road
(Street and Postal Designation, if applicable)

West Trenton                  New Jersey              08628
(City)                         (State)                  (Zip)

Said Registered Agent is an agent of the corporation upon whom process against the corporation may be served.

8. The business/activities which the corporation is authorized to conduct in New Jersey, and which it is also authorized to conduct in its home jurisdiction are:
Provide guard services and related security services. Notwithstanding the foregoing, the purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized to do business under the laws of New Jersey.

Note:  Attach a good standing certificate from the home state dated not more than 30 days prior to filing in New Jersey

Signature: _____
(Must be Ch. of Bd., Pres., or Vice Pres.)

Timothy M. Wood

Date:  May 7, 1999          Title: Vice President

**The purpose of this form is to simplify the filing requirements of the Division of Revenue, Commercial Recording and does not replace the need for competent legal**



**W. Fox McKeithen**
**Secretary of State**

## APPLICATION FOR CERTIFICATE OF AUTHORITY
## TO TRANSACT BUSINESS IN LOUISIANA
### (R.S. 12:304)

| | |
|---|---|
| **Foreign Corporation**<br>Enclose $100.00 filing fee<br>Make remittance payable to<br>Secretary of State<br>*Do not send cash* | **Return to:  Corporations Division**<br>P.O. Box 94125<br>Baton Rouge, LA 70804-9125<br>Phone (225) 925-4704 |

STATE OF <u>Illinois</u>

PARISH/COUNTY OF <u>Cook</u>

Check one:
( ) Non profit
(X) Business

Check one:
( ) Original Application
(X) Amended Application

*MCKEITHEN*
*Secretary of State*
*Received & Filed*
*DATE MAY 1 8 1999*

Current Corporation Name: <u>Burns International Security Services Corporation</u>

Previous Corporation Name: <u>Borg-Warner Protective Services Corporation</u>

(use only for amended application changing the corporation name)

A corporation organized under the laws of the State of <u>Delaware</u> with principal office within state of organization at

<u>The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,</u>
<u>Wilmington, Delaware 19801</u> and having its

(domicile address, city, state, zip)

principal office (wherever located) outside of State of organization at <u>Two Campus Drive, Parsippany, New Jersey 07054</u>

(address, city, state, zip)

_____ doing business,
or being about to do business in the state of Louisiana in conformity with the laws thereof, does, pursuant to the laws of said state, hereby makes its written declaration that

the registered office of the corporation in Louisiana is located at <u>8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809</u>

(address, city, state, zip)

and its registered agent(s) in Louisiana <u>T Corporation System, 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809</u> and the principal

Agent(s) Name and Address (Must be identical to registered office in LA)

business establishment in the State of Louisiana is <u>1450 Blacklake Road, Hackberry, Louisiana 70645</u>

(address, city, state, zip)

the nature of business which the corporation proposes to transact in this State, if it does not propose, or is not permitted, to transact in this State business of every nature

which it is empowered to transact by its articles or certificate of incorporation; _____

_____

_____

The corporation's director(s) and officer(s) names and addresses (attach addendum if needed): _____

<u>See attached list of officers & directors</u>

Corporation's federal tax identification number: <u>36-3179778</u>    Date first transacted business in Louisiana: <u>December 20, 1982</u>

Dated and executed at <u>Chicago, Illinois</u> on the <u>7th</u> day of <u>May</u> <u>1999</u>

*Diana W. Bligh*

To be signed by any officer
Diana W. Bligh

On this <u>7th</u> day of <u>May</u>, <u>1999</u> personally appeared before me <u>Diana W Bligh</u> who being by me first duly sworn

declared that he/she is the <u>Assistant Secretary</u> of the above named corporation, and that the statements contained therein are true.

(Title)

*Cecilia M. Kurtzweil*

Notary

Cecilia M. Kurtzweil

"OFFICIAL SEAL"
LISA A. BAKER
COMMISSION EXPIRES 04/22/03

C T Corporation System

By _____

*Francis P. Regan*
Registered Agent
Assistant Secretary

I hereby acknowledge and accept the appointment as registered agent for and on behalf
of the above named corporation.

Sworn to and subscribed before me this <u>14th</u> day of <u>May</u>, <u>1999</u>.

*Lisa R. Baker*

Notary

326 Rev 7/97

(Note: This form may also be used when applying for an amended Certificate of Authority pursuant to R.S. 12:307)

(LA. - 028 - 2/17/99)



# APPLICATION FOR AMENDED
# CERTIFICATE OF AUTHORITY

Scott Moore, Secretary of State
Room 1301 State Capitol, P.O. Box 94608
Lincoln, NE 68509

Submit in Duplicate

Attach a certificate stating the name change amendment duly authenticated by the official having custody of the corporate records in the state or country under whose law it is incorporated.  Such certificate shall not be more than 60 days old.

Name of Corporation    Borg-Warner Protective Services Corporation

Incorporated under the laws of    Delaware

Amended Name of Corporation    Burns International Security Services Corporation

Date Incorporation    December 20    19 82

Period of Duration    Perpetual

Address of Principal Office    Two Campus Drive, Parsippany, New Jersey    07054
                                              Street Address                    City              State          Zip

Registered Agent    C T Corporation System

Registered Office    206 South 13th Street Suite 1500, Lincoln    NE    68508
                                  Street Address                              City                              Zip

DATED    May 7, 1999                    _Diana W. Bligh_
                                              Signature

                                              Diana W. Bligh,  Assistant Secretary
                                              Printed Name/Title

NOTE: The Business Corporation Act requires that every filing be signed by the chairperson of the board of directors, the president, or one of the officers of the corporation.  If the corporation has not yet been formed or directors have not yet been selected, the filing shall be signed by an incorporator.  If the corporation is in the hands of a receiver, trustee, or other court appointed fiduciary, the filing shall be signed by that fiduciary.

FILING FEE: $35.00

Revised 1/1/96

(NE - 1707 - 1/1/96)                                        Neb. Rev. Stat. 21.20.171

Case No.: 99-018826

Respectfully submitted,

John L. Urban
Florida Bar No.: 175307
Martens Dunaj Marlowe Davis &
Marlowe
201 South Biscayne Boulevard
Suite 880, Miami Center
Miami, Florida 33131
(305) 373-9977

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail and fax this 25th day of January, 2000 to: **Robert Pasin,** Attorney for Plaintiff, 3300 University Drive, Suite 601, Coral Springs, Florida 33065.

John L. Urban

Burns International Security Services Corporation

| Michael P. Stygles | Security Officer |
| Harold Taylor | Security Officer |

## STOCKS
## Common Stock

| Price/Par Value: | $1.00 | Date Authorized: | |
| CUSIP: | | Authorized: | 100 |
| SYMBOL: | | Outstanding: | 100 |
| | | Issued: | |
| | | # in Treasury: | |

| Current Owner(s) | Certificate No. | No. of Shares | Date Issued or Transferred | |
|---|---|---|---|---|
| Burns International Services Corporation | 5 | 100 | Friday, December 31, 1993 | |
|    Value of Consideration: | | | | |
|    Consideration: | | | | |

| Former Owner(s) | Certificate No. | No. of Shares | Date Issued or Transferred | Surrender Date |
|---|---|---|---|---|
| Baker Protective Services, Inc. | 1 | 100 | Saturday, October 01, 1983 | Friday, January 27, 1989 |
|    Value of Consideration: | | | | |
|    Consideration: | | | | |
| BW-Guard Services, Inc. | 2 | 100 | Friday, January 27, 1989 | Friday, June 30, 1989 |
|    Value of Consideration: | | | | |
|    Consideration: | | | | |
| Baker Industries, Inc. | 3 | 100 | Friday, June 30, 1989 | Wednesday, January 27, 1993 |
|    Value of Consideration: | | | | |
|    Consideration: | | | | |
| Baker Industries, Inc. | 4 | 100 | Wednesday, January 27, 1993 | Friday, December 31, 1993 |
|    Value of Consideration: | | | | |
|    Consideration: | | | | |

## INCORPORATION/QUALIFICATIONS

| Jurisdiction | Inc/Qual | Tax ID No. | Date | Duration |
|---|---|---|---|---|
| Delaware | Incorporation | | Tuesday, April 20, 1982 | |
| Alabama | Qualification | | Monday, December 27, 1982 | |
| Alaska | Qualification | | Monday, February 25, 1985 | |
| Arizona | Qualification | | Wednesday, December 22, 1982 | |
| Arkansas | Qualification | | Wednesday, December 29, 1982 | |
| California | Qualification | | Tuesday, December 28, 1982 | |

Burns International Security Services Corporation

| | | |
|---|---|---|
| **Colorado** | Qualification | Monday, December 20, 1982 |
| **Connecticut** | Qualification | Wednesday, December 29, 1982 |
| **District of Columbia** | Qualification | Monday, December 20, 1982 |
| **Florida** | Qualification | Monday, December 20, 1982 |
| **Georgia** | Qualification | Tuesday, January 11, 1983 |
| **Guam** | Qualification | Friday, February 20, 1998 |
| **Hawaii** | Qualification | Wednesday, January 12, 1983 |
| **Idaho** | Qualification | Monday, December 27, 1982 |
| **Illinois** | Qualification | Monday, December 27, 1982 |
| **Indiana** | Qualification | Monday, December 20, 1982 |
| **Iowa** | Qualification | Monday, December 20, 1982 |
| **Kansas** | Qualification | Monday, December 20, 1982 |
| **Kentucky** | Qualification | Monday, December 20, 1982 |
| **Louisiana** | Qualification | Monday, December 20, 1982 |
| **Maine** | Qualification | Monday, December 20, 1982 |
| **Maryland** | Qualification | Monday, December 20, 1982 |
| **Massachusetts** | Qualification | Wednesday, December 22, 1982 |
| **Michigan** | Qualification | Wednesday, December 29, 1982 |
| **Minnesota** | Qualification | Monday, December 20, 1982 |
| **Mississippi** | Qualification | Monday, December 20, 1982 |
| **Missouri** | Qualification | Monday, December 20, 1982 |
| **Montana** | Qualification | Thursday, January 06, 1983 |
| **Nebraska** | Qualification | Tuesday, December 21, 1982 |
| **Nevada** | Qualification | Monday, December 20, 1982 |
| **New Hampshire** | Qualification | Monday, December 20, 1982 |
| **New Jersey** | Qualification | Monday, December 20, 1982 |

Burns International Security Services Corporation

| New Mexico | Qualification | Monday, December 20, 1982 |
| North Carolina | Qualification | Monday, December 20, 1982 |
| New York | Qualification | Monday, December 20, 1982 |
| Ohio | Qualification | Monday, December 20, 1982 |
| Oklahoma | Qualification | Monday, December 20, 1982 |
| Oregon | Qualification | Monday, December 20, 1982 |
| Pennsylvania | Qualification | Monday, December 20, 1982 |
| Rhode Island | Qualification | Monday, December 20, 1982 |
| South Carolina | Qualification | Wednesday, December 22, 1982 |
| South Dakota | Qualification | Friday, November 15, 1985 |
| Tennessee | Qualification | Tuesday, December 28, 1982 |
| Texas | Qualification | Monday, December 20, 1982 |
| Utah | Qualification | Monday, December 20, 1982 |
| Vermont | Qualification | Monday, December 20, 1982 |
| Virgin Island | Qualification | Friday, June 05, 1998 |
| Virginia | Qualification | Thursday, December 23, 1982 |
| Washington | Qualification | Monday, December 20, 1982 |
| West Virginia | Qualification | Thursday, January 06, 1983 |
| Wisconsin | Qualification | Wednesday, December 22, 1982 |
| Wyoming | Qualification | Monday, December 20, 1982 |

IN THE CIRCUIT COURT OF THE SEVENTEENTH
JUDICIAL CIRCUIT, IN AND FOR BROWARD
COUNTY, FLORIDA

Case No.:

99-18826 (14)

Prestige Protective
Corp.                        )

v.                           )

Burns International
Security Services Corp.)

ORDER

**ATTACHMENT / EXHIBIT** 5

---

THIS CAUSE having come on to be heard on ~~Defendant's~~/Plaintiff's

Motion to Strike Defendants First Request for Admissions

and the Court having heard argument of counsel, and being otherwise advised

in the Premises, it is hereupon,

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

Granted, and Defendant's First Request for Admissions
is stricken and need not be responded to.

---

DONE AND ORDERED in Chambers, at Broward County, Florida,
this 27ᵗʰ day of January, 2000.

_____
Circuit Court Judge

Copies furnished:

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,
     Plaintiff,

v.                                                      Case No. 99-18826 (14)

BURNS INTERNATIONAL SECURITY
SERVICES CORP., a foreign corporation,
formally known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a foreign corporation,
     Defendant.
_____/

### MOTION TO STRIKE DEFENDANT'S FIRST REQUEST FOR ADMISSIONS

     Comes now the plaintiff and moves to strike Defendant's First Request For Admissions as being

irrelevant and immaterial, and as a just cause therefore would show the court as follows:

     The defendant attempted to remove this case to the jurisdiction of the federal court based upon

diversity of citizenship. Both the plaintiff and defendant submitted complete memorandums of law in

support of their respective positions. Plaintiff argued that such removal would be improper. The federal

court, (Judge Zloch), issued a four page opinion (attached) which denied the removal and returned the

case to the circuit court of Broward county, Florida.

     Defendant has now filed a request for admissions consisting of thirteen requests all of which

pertain only to the issue of diversity of citizenship. This question has already been determined adversely

to the defendant by Judge Zloch. The requests for admission have nothing to do with the issues now

before this court as framed by the complaint. Defendant's request for admissions is therefore irrelevant

and immaterial.

     Additionally, defendant's request for admissions is further objected to on the grounds that the

information sought to be admitted by plaintiff is completely beyond plaintiff's knowledge or ability to

determine. The individual items of the request each pertain to the internal and corporate operations of

the defendant, a large national corporation. Finally, the requests for admission are also objectionable on the grounds that they call for a legal analysis of complicated constitutional issues such as diversity of citizenship.

Wherefore, plaintiff requests that defendant's first request for admissions be stricken.

ROBERT PASIN
Attorney for the Plaintiff
3300 University Drive, Suite 601
Coral Springs, Florida 33065
954-345-0662
954-345-3902 (fax)
Florida Bar No. 341312

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished by mail on this 19th day of January, 2000, to Sherryl Martens Dunaj, of Martens Dunaj, Marlowe, Davis & Marlowe, 201 South Biscayne Blvd., Miami Center suite 880, Miami, Florida, 33131.

ROBERT PASIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-7561-CIV-ZLOCH

FILED by _____ D.C.

DEC 2 9 1999

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

PRESTIGE PROTECTIVE CORP.,
a Florida Corporation,

        Plaintiff,

vs.

        <u>FINAL ORDER OF REMAND</u>

BURNS INTERNATIONAL SECURITY
SERVICES CORPORATION, formerly
known as, BORG-WARNER PROTECTIVE
SERVICES CORPORATION,
a Delaware corporation,

        Defendant.

_____/

      THIS MATTER is before the Court upon the Plaintiff, Prestige
Protective Corp.'s Motion To Remand (DE 3) and the Defendant, Burns
International Security Services Corporation's, Notice of Removal
(DE 1) filed herein by the Defendant for removal of the
above-styled cause to the United States District Court, Southern
District of Florida, and the Court having carefully reviewed the
allegations of the Complaint, having carefully reviewed the court
file, and being otherwise fully advised in the premises, it is

      **ORDERED AND ADJUDGED** that the Plaintiff, Prestige Protective
Corp.'s Motion To Remand (DE 3) be and the same is hereby **GRANTED**.

      The Notice Of Removal (DE 1) is premised upon this Court's
diversity jurisdiction pursuant to Title 28 U.S.C. § 1332. Whether
an action filed in state court may properly be removed to Federal
Court is to be determined from the record at the time the Notice Of

Removal is filed. <u>Pullman Company v. Jenkins</u>, 305 U.S. 534 (1939). Because removal is only permissible when plaintiff's claim could have been filed in federal court originally, we must look to plaintiff's claim to determine whether removal was appropriate. <u>Burns v. Windsor Insurance Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994). When diversity of citizenship is the basis of Federal jurisdiction, it must be found to exist at the time the Complaint was filed. <u>OJB, Inc. v. Dowell; A Division of Dow Chemical Co.</u>, 650 F. Supp. 42 (N.D. Tex. 1986); <u>Portis v. Sears, Roebuck & Co.</u>, 621 F. Supp. 682 (E.D. Mo. 1985); <u>See generally</u>, 14A C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u>, Section 3723 (1985). It is clear from the record that at the time the Complaint was filed the allegations of the Complaint were insufficient to satisfy diversity jurisdiction.

A review of the Complaint reveals that the requisite diversity of citizenship as to Plaintiff and Defendant is not apparent on the face of the Complaint. The Complaint alleges only that:

> 1.   Plaintiff, Prestige Protective Corporation, (Prestige) is an active Florida corporation, with its principal place of business located in Broward county, Florida.
>
> 2.   Defendant, Burns International Security Services Corporation (Burns), is a foreign corporation authorized to do business in the state of Florida and doing business in Broward county, Florida. . .

A corporation has dual citizenship for diversity purposes: a corporation is a citizen of any state by which it has been incorporated and a citizen of the state in which the corporation

2

incorporated and a citizen of the state in which the corporation has its principal place of business. Hence, it is necessary both to plead the state or states of incorporation and the state in which the corporation has its principal place of business in order to show that diversity jurisdiction exists. See 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Section 3624 (1984). The Complaint filed herein lacks any allegation regarding the state or states in which the Defendant is incorporated or the state in which it has its principal place of business. Therefore, the diversity of citizenship requirements have not been satisfied.

The Court notes that pursuant to 28 U.S.C. § 1447(c), this Court may, sua sponte, review this matter, and "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

It should be kept in mind that the statutes conferring both diversity and removal jurisdiction are to be strictly construed. District Courts are to strictly construe the complex removal procedures as removal is in derogation of state court jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365 (1978). Further, defendant's right to remove and plaintiff's right to choose his forum are not on equal footing . . . where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand. Burns v. Windsor Insurance Co., 31 F.3d at 1095; see also Boyer v. Snap-on Tools Corp., 913 F.2d 108 (3rd Cir. 1990); Coker v. Amoco Oil Co., 709 F.2d 1433 (11th Cir. 1983).

3

Moreover, it is well settled that the removal statute is to be strictly construed against removal and in favor of remand. Libhart v. Santa Monica Dairy Co., 592 F.2d 1062 (9th Cir. 1979).

The Court notes that the Federal Courts are Courts of limited jurisdiction. The presumption, in fact, is that a Federal Court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. Fitzgerald v. Seaboard System Railroad, Inc., 760 F.2d 1249 (11th Cir. 1985). Therefore, the facts showing the existence of jurisdiction must be affirmatively alleged in the Complaint. Kirkland Masonry, Inc. v. Commissioner of Internal Revenue, 614 F.2d 532 (5th Cir. 1980); see also 13 Wright, Miller & Cooper, Federal Practice and Procedure, Section 3522 (1984).

The Court recognizes that current trends in the law favor expanded Federal court jurisdiction. The Court is mindful, however, that Article III of the Constitution of the United States very clearly prescribes the scope of such jurisdiction. While those who advocate a more liberal interpretation of Article III, as well as a complete disregard of the boundaries of Federal jurisdiction originally defined by the founding fathers, may disagree with the limited view of Federal jurisdiction expressed by this Court and by the cases cited within this Final Order of Remand, the Court's decision herein is entirely faithful to the Constitution and to the intent of the founding fathers.

Accordingly, the above-styled cause is **REMANDED** to the state

4

forum for further proceedings in that this Court lacks subject matter jurisdiction.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Clerk of the United States District Court, Southern District of Florida, be and the same is hereby directed to forward a certified copy of this Order to the Clerk of the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, Case No. 99018826.

To the extent not otherwise disposed of herein, all pending Motions are hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _29th_ day of December, 1999.

_____
WILLIAM J. ZLOCH
United States District Judge


Copies furnished:

Robert Pasin, Esq.
For Plaintiff

Sherryll Martens Dunaj, Esq.
For Defendant

Clerk, Circuit Court
Broward County, Florida
Case No. 99018826

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**NIGHT BOX
FILED**

**NOV 2 4 1999**

CASE NO.: 99-7561-Civ-Zloch

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL
Magistrate Judge Seltzer

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,

　　　　　Plaintiff,

v.

BURNS INTERNATIONAL SECURITY
SERVICES CORPORATION.,
formally known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a Delaware corporation,

**ATTACHMENT / EXHIBIT 6**

　　　　　Defendant

_____/

## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS ACTION AND SUPPORTING MEMORANDUM OF LAW

Defendant, BURNS INTERNATIONAL SECURITY SERVICES CORPORATION, by

its undersigned counsel, pursuant to Rule 12(b), Fed.R.Civ.P., respectfully moves this

Court to compel and require Plaintiff PRESTIGE PROTECTIVE CORPORATION to submit

this action and all claims made herein to arbitration in accordance with the terms of the

promissory Note upon which Plaintiff has here sued.[1]

This action arises out of the sale of the assets of a business including customer

_____

[1] While this is purely an accounting dispute that should be addressed by Deloitte & Touche, as the parties agreed, Defendant does not waive any other Rule 12(b)(6) grounds for dismissal of Plaintiff's complaint, including in particular any grounds based upon the economic loss rule, given that there is a written agreement spelling out the rights and duties between these parties and there is herein no claim for personal injury or property damage. See Florida Power and Light Company v. Westinghouse Electric Corp., 510 So.2d 899 (Fla. 1987) and its progeny.

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

accounts by Plaintiff PRESTIGE to Defendant BURNS INTERNATIONAL (formerly BORG-WARNER). The transaction was memorialized by a Letter Agreement dated July 6, 1998 (a copy of which is attached hereto and to the Complaint as Exhibit B). As set out in paragraph 3, page 1 of the Letter Agreement, the purchase price was $1.05 million, plus delivery of a contingent Promissory Note (Exhibit A), the latter of which is the subject of this suit. By the terms of the transaction, the parties contemplated the potential of a payment of additional monies (hence the Note)–but any such additional payment was agreed to be contingent upon the purchaser Defendant BURNS "retaining" a specified percentage of the client base which was one of the assets represented by Plaintiff PRESTIGE to exist and sold by Plaintiff PRESTIGE to Defendant BURNS (hence the Note terminology "Customer Retention Percentage"). That contingent aspect of the commercial transaction was memorialized by the Promissory Note (Exhibit A) The Note provides in pertinent part as follows:

> This note is issued pursuant to and is subject to the terms and conditions of the letter agreement, dated July 6, 1998....

> For value received, Buyer [Burns f/k/a Borg-Warner] hereby promises to pay to Seller [Prestige] the principal sum of $300,000 in the manner described herein....

> On the date that is 15 days after each of the first and second anniversaries of the Closing [July 6, 1998]...Buyer shall pay to Seller the lesser of (I) the unpaid principal amount of the Note or (ii) the principal amount, if any, shown opposite the Customer Retention Percentage below:

> | Customer Retention Percentage | Principal Amount |
> |---|---|
> | 100 | $150,000 |
> | equal or greater than 90 but less than 100 | 100,000 |

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

| | |
|---|---|
| equal or greater than 80 but less than 80 | 50,000 |
| less than 80 | 0 |

The essence of this suit is that Plaintiff PRESTIGE complains that it was not paid the contingent sums provided for in the promissory Note (Exhibit A to Plaintiff's Complaint) and that PRESTIGE disagrees with the calculation upon which Defendant determined that no additional monies were due.[2]

In the event of this kind of dispute, the subject promissory Note (at paragraph 1, page 2) plainly provides for the forum and venue; the parties chose an alternative dispute resolution mechanism in the event the parties are unable to reach agreement about any calculations made under the terms of the Note or payments made under the Note as follows--

> In the event that the parties cannot resolve any disagreement as to any amount(s) due under this paragraph within a reasonable period of time, such amount(s) will be determined by Deloitte & Touche LLP, whose fees and expenses will be paid by the non-prevailing party and whose determination will be final and binding (emphasis added).

---

[2]While the Complaint purports to set out claims in four separate counts, in fact, every one of the Counts complains about and repeats complaints about the very same thing--that in July 1999 Defendant performed calculations pertaining to the retention of the customer base which was sold by Plaintiff to Defendant and that based on those calculations under the terms of the parties Note no additional sums were due to Plaintiff Prestige. See composite Exhibit C, Letter Notice and attached calculations sent by Defendant to Plaintiff Prestige on July 21, 1999, Prestige Protective Corporation's demand letter dated the same date, and a subsequent self-serving letter from Prestige's counsel, demanding the very documentation attached to Defendant's Letter Notice. This kind of dispute--an accounting calculation the parameters of which are defined in the Note, that lends itself to application of accounting and auditing expertise -- and it is for that very reason that the parties agreed at the time they entered into their purchase and sale agreement that any such disputes should be resolved in a final and binding way by an accounting firm, Deloitte & Touche.

-3-

The Note also provides, in the last paragraph, that Illinois law will be applied—

> This Note shall be governed by and construed in accordance with the internal law (and not the law of conflicts) of the State of Illinois.

Florida law recognizes the right of contracting parties to agree on the law to be applied to their disputes. Marque v. Fabbri, 493 So. 2d 437 (Fla. 1986); Dataline Corporation v. L.D. Mullins Lumber Co., 588 So. 2d 1078, 1079 (Fla. 4th DCA 1991). Illinois courts have consistently held fully enforceable appraisal clauses and other alternative dispute resolution agreements under which the parties submit controversies to an out-of-court settlement mechanisms. Illinois Courts have found such agreements to be enforcable as and analogous to arbitration clauses. Bailey v. Timpone, 389 N.E. 2d 1193, 1196 (Ill. 1979); General Casualty Co. v. Tracer Industries, Inc., 674 N.E. 2d 473, 420 (Ill. 4th App. Ct. 1995); Beard v. Mount Carroll Mutual Fire Insurance Company, 561 N.E. 2d 116, 118 (Ill. 5th App. Ct. 1990).

This Motion is made pursuant to Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et.seq., and pursuant to section 1 of the Illinois Uniform Arbitration Act, which, like the Federal Act (and indeed the Florida Act), recognizes agreements to arbitrate as valid, enforceable and irrevocable. Under the Federal Arbitration Act, 9 U.S.C. §2, agreements to arbitrate are validated and are made "irrevocable" and "enforcable." Moreover, §3 of the Act provides that where a suit or claim is brought upon any issue referable to arbitration under an agreement to arbitrate,

> [the] court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

with the terms of the agreement...(emphasis added).

Similarly, section 2(a) of the Illinois Uniform Arbitration Act, provides that the court shall order parties to proceed with arbitration upon application of a party showing an agreement to arbitrate. <u>Board of Managers of the Courtyards at the Woodlands Condominium Association v. Iko Chicago, Inc.</u>, 697 N.E. 2d 727, 729-730 (Ill. 1998).

The Illinois Supreme Court recognizes that "[i]t is a well established principal that arbitration is a favored alternative to litigation by state, federal and common law because it is 'a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions." <u>Board of Managers of the Courtyards at the Woodlands Condominium Association</u>, 697 N.E. 2d at 730.

Both of the parties to this commercial transaction are sophisticated corporate entities. The Illinois Supreme Court has held that once a contract containing a valid arbitration clause has been executed, the parties thereto are irrevocably committed to arbitrate <u>all</u> disputes arising thereunder. A denial of a party's request for arbitration would make arbitration clauses meaningless and would deny the parties the right to their contractually chosen method of dispute resolution. <u>Board of Managers of the Courtyards at the Woodlands Condominium Association</u>, 697 N.E. 2d at 731.

This action is based upon an alleged dispute upon the payment terms of the Note between these parties; Plaintiff complains in this suit about the calculations made under the terms of that Note and whether any sums are or were due thereunder. <u>See</u> July 21, 1999, Letter Notice to Plaintiff PRESTIGE with the attached exhibit containing Defendant's calculations, and Plaintiff PRESTIGE's demand letter of the same date, both attached hereto.

The parties are in disagreement. The mechanics for the resolution of this disagreement (and any similar such disagreement) has been specifically addressed by the Note, as set forth above.

The agreement to submit this dispute to an alternative form of dispute resolution and to arbitrate any disputes through the neutral and expert accountant arbitrator, Deloitte & Touche, as contained in the Note is enforceable and favored under both Federal and Illinois law. The Federal Arbitration Act embodies a strong public policy of enforcing arbitration agreements. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983) Indeed, the Supreme Court has observed that "the Federal Arbitration Act leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

WHEREFORE, upon the foregoing authorities and the documents attached hereto, and upon the clear language set out in the Note attached hereto, Defendant prays that this court dismiss this action, or in the alternative stay this action, and that this Court further enter its order compelling the parties to proceed with arbitration of the disputes raised in this action by applying for a final and binding resolution of this dispute with Deloitte & Touche, as provided for in the agreement between the parties, and upon the terms set out in the Note.

-6-

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

Respectfully submitted,

Sherryll Martens Dunaj
Florida Bar #136707
John L. Urban
Florida Bar No.: 175307
Martens Dunaj Marlowe Davis & Marlowe
201 South Biscayne Boulevard
Miami Center/Suite 880
Miami, Florida 33131
(305) 373-9977
(305) 373-8877 fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail and fax this 24th day of November, 1999 to: **Robert Pasin,** Attorney for Plaintiff, 3300 University Drive, Suite 601, Coral Springs, Florida 33065.

Sherryll Martens Dunaj

## NON-NEGOTIABLE PROMISSORY NOTE

This note is issued pursuant and is subject to the terms and conditions of the letter agreement, dated July 6, 1998 (the "Agreement"), by and between Borg-Warner Protective Services Corporation ("Buyer"), a Delaware corporation, and Prestige Protective Corporation ("Seller"). Capitalized terms used herein without definition shall have the meaning ascribed to such terms in the Agreement.

For value received, Buyer hereby promises to pay to Seller the principal sum of $300,000 in the manner described herein. The outstanding unpaid balance of said principal sum shall not bear interest.

On the date that is 15 days after each of the first and second anniversaries of the Closing (or if such date is not a business day, then the next succeeding business day), Buyer shall pay to Seller the lesser of (i) the unpaid principal amount of the Note or (ii) the principal amount, if any, shown opposite the Customer Retention Percentage below:

| Customer Retention Percentage | Principal Amount |
| --- | --- |
| 100 | $150,000 |
| equal or greater than 90 but less than 100 | 100,000 |
| equal or greater than 80 but less than 90 | 50,000 |
| less than 80 | 0 |

Any principal amount of the Note remaining after the date that is 15 days after the second anniversary of the Closing shall be cancelled and such cancellation shall be treated for all purposes as an adjustment to the consideration paid or received under the Agreement. Thereafter, Buyer shall be discharged from its obligations with respect to such principal amount.

"Customer Retention Percentage" means the percentage amount that results from dividing Account Revenues by $1,014,000. "Account Revenues" means the total net service revenues generated by all Customers during the three-month period ending on the month end prior to the most recent anniversary date of the Closing, but shall not include the amount of such net service revenues that is attributable to the provision of services (i) at a price per hour that is greater than the price paid by such Customer as of the Closing, (ii) on a "temporary", "special" or "on call" basis, as such terms are commonly understood in the contract guard industry, (iii) to a Customer that at the end of such period had a receivable due to Buyer that is more than 30 days past due, (iv) to an account that was not a Customer as of the Closing unless (a) such account has been secured by Mr. Richard Gallione, as determined by the President, Gulf States Business Unit of Buyer, (b) such account has entered into a service agreement authorized by such President and (c) no commissions or fees with respect to such revenue are payable under any agreement with Seller or Mr. Gallione, or (v) to a Customer that as of the end of such period had an unresolved claim for loss, liability or other obligation relating to services provided to such Customer prior to the Closing.



**EXHIBIT**

**A**

BORG-WARNER LEGAL

July 6, 1998

Prestige Protective Corporation
9764 West Sample Road
Coral Springs, FL 33065
Attention: Mr. Richard K. Gallione

Dear Mr. Gallione:

This letter sets forth the agreement by and between Borg-Warner Protective Services Corporation ("Buyer") and Prestige Protective Corporation ("Seller") relating to the assignment by Seller to Buyer of certain contracts ("Contracts") for security officer services provided to customers ("Customers") and the sale and transfer of certain deposits, prepayments, equipment, intellectual property, personal property and other rights.

1.     On the terms and subject to the conditions set forth in this letter, Seller agrees to transfer and assign to Buyer all of its right, title and interest in and to (a) the Contracts, (b) the headquarters office lease ("Real Estate Lease"), (c) claims, deposits, prepayments, refunds, causes of action and rights of recovery, set off or recoupment, and (d) the equipment, intellectual property and personal property listed on the Equipment Schedule ("Equipment") and Buyer agrees to assume all obligations of Seller under the Contracts to furnish services to Customers after the Closing and under the Real Estate Lease to pay rent after the Closing.

2.     The Closing shall take place at 12:00 noon on July 6, 1998 at the offices of Seller or at such other place as mutually agreed by Buyer and Seller. The effective date of the start of security services by Buyer under the Contracts will be as of 12:01 a.m. Eastern Daylight Time, on July 6, 1998 (the "Effective Time"). At Closing Seller shall deliver to Buyer (a) an original copy of each Contract duly executed by the Customer, provided that the Contract with Crowley American Transport, Inc. shall have been modified to eliminate the requirement to provide stowaway security services, (b) an assignment ("Assignment") of the Contracts from Seller to Buyer and a bill of sale relating to the Equipment, in the form attached as Exhibit A, duly executed by Seller, (c) an assignment and consent of landlord to the Real Estate Lease and (d) such other instruments, certificates and other documents as Buyer may reasonably request in order to effect the transactions contemplated by this agreement. At Closing Buyer and Mr. Richard K. Gallione will have entered into a consulting agreement substantially in the form of Exhibit B hereto.

3.     At Closing, in exchange for delivery of the Contracts and Equipment to Buyer, as provided herein, Buyer shall pay to Seller (i) cash in the amount of $1,050,000 payable by wire transfer or



**EXHIBIT**

**B**

delivery of other immediately available funds and (ii) a promissory note substantially in the form of Exhibit C hereto in the principal amount of $300,000 ("Note").

4.    Seller represents and warrants to Buyer:

(a)    Seller is a corporation, duly organized, validly existing and in good standing under the laws of the State of Florida. Seller has no subsidiaries. Seller has full power and authority to enter into this agreement and all other agreements, documents and instruments contemplated hereby and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. This agreement constitutes, and each of the other agreements, documents and instruments contemplated hereby to be executed by Seller (when executed and delivered by Seller) will constitute, the legal, valid and binding agreement of Seller, enforceable in accordance with its terms.

(b)    Neither the execution and delivery of this agreement and the other agreements, documents or instruments contemplated hereby, the performance by Seller of its obligations hereunder or thereunder, nor the consummation of the transactions contemplated hereby or thereby will directly or indirectly (with or without notice or lapse of time) (i) contravene, conflict with or result in a violation of any provision of Seller's charter, bylaws or stockholder or director resolutions, (ii) violate any law, statute, regulation, order, decree or other restriction of any government, governmental agency or court to which Seller or any of its assets is subject, (iii) result in the breach of, conflict with, constitute a default under, accelerate or permit the acceleration of the performance required by, or create in any party the right to terminate, modify, exercise a remedy under or cancel the terms of any agreement, lease, license, permit, instrument of indebtedness or other obligation to which any Company or any of their respective assets is subject or (iv) result in the creation of any lien, charge or encumbrance on any of the Contracts or Equipment. Seller does not need to give any notice to, make any filing with, or obtain any authorization, consent or approval of any government or governmental agency in order for the parties to consummate the transactions contemplated hereby.

(c)    Attached as the "Financial Statements Schedule" are (i) the unaudited balance sheets and statements of income and cash flow of Seller as of and for the year ended December 31, 1997, 1996 and 1995 and as of and for the year to date period ended May 31, 1998. Each of the foregoing financial statements, including in all cases the notes thereto, if any, is correct and complete, is consistent with Seller's books and records (which, in turn, are correct and complete), and has been prepared in accordance with generally accepted accounting principles, consistently applied (subject to the lack of footnote disclosure and, in the case of interim financial statements, changes resulting from normal year-end adjustments, which will not be material).

(d)    Seller does not have any obligation or liability (whether accrued, absolute, contingent, unliquidated or otherwise, whether or not known to Seller, whether due or to become due and regardless of when asserted) arising out of any transaction entered into at or prior to the Closing, or any state of facts existing at or prior to the Closing other than: (i) liabilities set forth on the

-2-

Each Contract is valid, binding and in full force and effect and will continue to be valid, binding and in full force and effect on identical terms following the Closing, without default or breach by any party. No event has occurred on the part of the Seller which with notice or lapse of time would constitute a default or breach under any Contract, nor has any party been threatened with any default or breach under any Contract.

(g)    All accounts receivable from Customers will have been billed on or before July 13, 1998 for services rendered prior to Closing. Seller has not billed any Customer for services rendered or to be rendered after the Effective Time. No Customer is delinquent by more than 30 days in the payment of any invoice rendered to it by Seller, nor is Seller in default or alleged to be in default under any obligation to any Customer nor has any Customer expressed dissatisfaction or otherwise indicated any problem with respect to the security officer services currently being provided by Seller.

(h)    Schedule 4(h) sets forth as of the date hereof the following information with respect to all active employees employed by Seller: name, social security number, job function, office location and status of security guard license and weapons permit. Seller has conducted pre-employment background and character investigations with respect to all of its employees and no current employee has been convicted of a misdemeanor or felony or is suspected by Seller's management of appropriating any property of Seller or any Customer. Seller has made available to Buyer correct and complete files of investigations relating to any unresolved misappropriation of property.

There are no collective bargaining agreements and no labor union representatives covering any of Seller's employees. Seller is not involved in or threatened with, any labor dispute, arbitration, lawsuit or administrative proceeding relating to labor matters involving their employees. There are no charges or complaints involving any federal, state or local civil rights enforcement agency or court.

Seller has complied in all respects with all laws, rules and regulations relating to employment, equal employment opportunity, nondiscrimination, immigration, wages, hours, benefits, collective bargaining, payment of social security, unemployment and other similar taxes, occupational health and safety, and plant closing. Seller is not liable for the payment of any compensation, damages, taxes, fines, penalties or other amounts, however designated, for failure to comply with any of the foregoing laws, rules and regulations.

(i)    Schedule 4(i) lists all "employee benefit plans" (as that term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended "ERISA") ("Benefit Plans") that Seller maintains or to which it contributes for the benefit of any current or former employee. The Benefit Plans comply in form and in operation with all applicable requirements of law, including ERISA and the Code. No liability to the Pension Benefit Guaranty Corporation, Internal Revenue Service or United States Department of Labor exists or is expected to be incurred with respect to any Benefit Plan. Seller does not contribute, nor is it required to contribute, to any

-4-

BORG-WARNER LEGAL
Case 0:00-cv-06206-WJZ   Document 59   Entered on FLSD Docket 02/11/2000   Page 60 of 108

interest in the leasehold or sublease hold, (D) all facilities leased or subleased thereunder have received all approvals of governmental authorities required in connection with the operation thereof and have been operated and maintained in accordance with applicable laws, rules and regulations, and (E) Seller is not in breach or default of any payment term and no event has occurred which, with notice or lapse of time, would permit termination, modification or acceleration under the lease or sublease.

(l)     Schedule 4(l) lists all patents, trademarks, service marks, trade names, brand names, copyrights and other proprietary rights and applications, licenses (other than licenses implied by the sale of a product and perpetual, paid-up licenses for commonly available software programs under which Seller is the licensee) or rights for the foregoing used in the conduct of Seller's business. Such Schedule identifies each such proprietary right that any third party owns and that Seller uses pursuant to license or agreement. Seller has not received any notice of infringement, misappropriation or conflict from any third party with respect to such proprietary rights and is not infringing, misappropriating or otherwise in conflict with any proprietary rights of any person.

(m)    Neither Seller nor any director, officer, agent or employee of Seller has directly or indirectly (i) made any contribution, gift, bribe, payoff, kickback or other payment to any person or entity, private or public, to obtain favorable treatment in securing or conducting business or (ii) established or maintained any fund or asset that has not been recorded in the books and records of Seller.

(n)    Seller is not in violation of any law or any judgment, award, rule, regulation, order, decree or writ, and has not received notice of any such violation. Seller has not taken any action, or failed to take any action, under the requirements of any law, rule or regulation, which action or failure will or may, in any way, preclude or prevent Buyer from providing services to the Customers or operating after the Closing in the same manner as theretofore provided or operated by Seller.

(o)    The Note is being acquired by Seller solely for its own account, with no view to any distribution thereof in violation of the Securities Act of 1933, as amended ("Securities Act"), or the applicable securities laws of any state. Seller understands that the Note has not been registered under the Securities Act or the securities laws of any state and may not be sold or otherwise transferred unless it is registered under the Securities Act and any applicable state securities laws or unless an exemption from such registration is available. Seller acknowledges that, in connection with its acquisition of the Note, it has been given the opportunity to make inquiries of officers of Buyer and to obtain such additional information from Buyer as Seller deemed relevant to its investment decision.

5.    As additional consideration for Buyer entering into this Agreement, Seller promises and agrees that it shall not (i) for a period of five years commencing as of the Closing, directly or indirectly own, become interested in, or become involved in any manner whatsoever, in any business activity which is similar to or competitive with the business of providing security officer services in the counties of Palm Beach, Broward and Dade in the State of Florida; (ii) solicit or

-6-



Seller agrees that it will not, from and after the Closing, either directly or indirectly, disclose or use any trade secrets, customer lists and other secret, proprietary or confidential information relating to any Customer or Contract, except with the prior consent of Buyer.

8.     All communications required or permitted to be given hereunder shall be in writing and shall be sent by express mail service that provides for confirmation of delivery, telecopy, telefax or other electronic transmission to the extent receipt is confirmed, or mailed first class, registered or certified mail, addressed as follows: if to Buyer, then to Borg-Warner Protective Services Corporation, 200 South Michigan Avenue, Chicago, Illinois 60604, attention Treasurer, with a copy to General Counsel; if to Seller, then to the address listed on the first page of this Agreement.

8.     This letter shall be governed by and construed in accordance with the internal law (and not the law of conflicts) of the State of Illinois.

9.     This letter (and/or any rights hereunder) may not be assigned by Seller. This letter (including the documents referred to herein) constitutes the entire agreement between the parties and supersedes any prior understandings and agreements between the parties relating to its subject matter. This letter shall not confer any rights or remedies upon any person other than the parties hereto.

If the foregoing correctly sets forth the understanding and agreements with respect to the transactions contemplated hereby, please execute the enclosed copy of this letter in the space provided below and deliver it to the undersigned. This letter does not constitute an offer and will become effective only when Buyer and Seller have executed it.

Very truly yours,

BORG-WARNER PROTECTIVE SERVICES CORPORATION

By: _____
        Brian S. Cooper
        Assistant Treasurer


AGREED AND ACCEPTED AS OF THE DATE
FIRST ABOVE WRITTEN:

PRESTIGE PROTECTIVE CORPORATION

By: _____
Its:  PRESIDENT, CEO

-8-

LAW OFFICES OF

## MARTENS DUNAJ MARLOWE DAVIS & MARLOWE

A PARTNERSHIP OF PROFESSIONAL ASSOCIATIONS

www.miamilaw.net

MIAMI OFFICE
201 SOUTH BISCAYNE BOULEVARD
SUITE 880, MIAMI CENTER
MIAMI, FLORIDA 33131
(305) 373-9977
(305) 373-8877 FACSIMILE

July 20, 1999
REPLY TO: MIAMI

TAMPA BAY OFFICE
8726 STATE ROAD 54
SUITE E
NEW PORT RICHEY, FLORIDA 34653
(813) 376-9599
FACSIMILE (813) 376-3146

BY EXPRESS MAIL AND
CERTIFIED U.S. MAIL

Richard K. Gallione, President
Prestige Protective Corporation
c/o Robert Paisin, Esq.
3300 University Drive
Suite 601
Coral Springs, FL 33065

EJ279991866US

RE:    Promissory Note dated July 6, 1998
       Prestige Protective Corporation

Dear Mr. Gallione:

Pursuant to the terms of the Non-Negotiable Promissory Note dated July 6, 1998, by and between Borg-Warner Protective Services Corporation and Prestige Protective Corporation, please be advised that the customer retention percentage as of the first anniversary of the July 6, 1998, closing is less than 80% and, as a consequence, the principal amount due under the terms of the non-negotiable promissory note is zero. Enclosed herewith is a detailed report computing the account revenues and customer retention percentage, resulting in the zero principal amount.

This notice is hereby given pursuant to paragraph 8 of the buy-sell agreement dated July 6, 1998, with copies hereof to the addresses listed below.

Sincerely,

Sherryll Martens Dunaj, Esq.
Sherryll Martens Dunaj, as counsel

SMD\kg
Enclosure



EXHIBIT
C
COMPOSITE

cc:     BY EXPRESS MAIL
        Prestige Protective Corporation
        9764 W. Sample Road
        Coral Springs, FL 33065                      EJ279991897US
        Attn: Richard K. Gallione, President


        BY EXPRESS MAIL
        Richard K. Gallione, President               EJ279991883US
        Prestige Protective Corporation
        11030 N.W. 28th Street, Coral Springs, FL 33065


        and


        BY EXPRESS MAIL
        Richard K. Gallione, President
        Prestige Protective Corporation
        c/o. Richard K. Gallione & Associates, Inc.  EJ279991870US
        10105 W. Sample Road, Coral Springs, FL 33065

**Prestige Protective Corporation**
c/o Richard K. Gallione
11030 NW 28th Street
Coral Springs, Florida  33065
Telephone: (954) 255-5712
Facsimile: (954) 255-5711

July 20, 1999

## NOTICE OF DEFAULT

**Borg-Warner Security Corporation**
**378 Whooping Loop**
**Altamonte Springs, Florida**

Please be advised that as per your July 20, 1999 correspondence and lack of payment of your $ 300,000.00 promissory note dated July 6, 1998, you are in default.

You may either pay the full $ 300,000.00 immediately, as any further credit terms have been revoked as you may consider the note now called in full or you may surrender the assets.

To voluntarily surrender all assets of the buy/sell agreement to avoid unneeded collection and additional legal costs, please contact us in writing and advise us as to a location and time that we may take possession of the assets listed in the buy/sell agreement dated July 6, 1998.  Until then, be advised you are in default, and any and all collection proceedings are now commenced as we intend to begin legal foreclosure proceedings immediately.  In the interim, you will be contacted by our legal collection agents along with collection agencies working on our behalf as our official representatives that will be handling this matter.

Thank you.

**PRESTIGE PROTECTIVE CORPORATION.**




# ROBERT PASIN
## ATTORNEY AT LAW

Coral Springs Financial Center
3300 University Drive, Suite 601
Coral Springs, FL 33065
(954) 345-0662
Fax: (954) 345-3902

July 26, 1999

Borg-Warner Protective Services Corp.
200 South Michigan Ave.
Chicago, IL 60604
Attn: Treasurer, General Counsel

Re:    Prestige Protective Corporation, purchase by Borg-Warner;
       Promissory Note - July 6, 1998

Dear Sir/Madame:

I represent Mr. Richard Gallione and Prestige Protective Corporation regarding the above referenced matters. I am in receipt of a letter dated July 20, 1999 from your attorneys, Martens, Dunaj, Marlowe, Davie &Marlow, of Miami Florida, regarding the promissory note.

Pursuant to the terms of said note, this letter is to notify Borg-Warner Protective Services Corp. that Mr. Gallione and Prestige Protective Corp. are in disagreement with the determination of the amount due under that note as set forth in your attorney's letter of July 20, 1999 and enclosure.

I hereby request that you supply me, on behalf of Mr. Gallione and Prestige Protective Corp. legible copies of all your account documents pertaining to the calculations called for pursuant to the promissory note. This must include account records for all applicable customers for the twelve month period commencing July, 1998 through June, 1999 and any other documents upon which you relied upon in determining the amount payable under the note. Please provide me with these items within then days. They should be readily available as you have already compiled them to reach your calculations.

Very truly yours,

Robert Pasin

cc:    Sherryll Martens Dunaj, Counsel
       Borg-Warner - Treasurer
       Borg-Warner - General Counsel

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO.: 99-7561-Civ-Zloch**

MINUTE BOX

DEC 1 7 1999

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

Magistrate Judge Seltzer

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,
             Plaintiff,

v.

BURNS INTERNATIONAL SECURITY
SERVICES CORPORATION.,
formally known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a Delaware corporation,
             Defendant

_____/

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendant, BURNS INTERNATIONAL SECURITY SERVICES CORPORATION, by its undersigned counsel, in further support of its Motion to Compel the Alternative Dispute Resolution Arbitration to which these parties contracted as their mechanism for resolution of valuation and calculation disputes, submits the following authorities in reply and respectfully prays that this Court compel arbitration of this claim in accordance with the agreement made between Plaintiff Prestige and Defendant Burns.

## A VALID ARBITRATION AGREEMENT EXISTS

The promissory Note upon which Plaintiff Prestige sues (at paragraph 1, page 2) plainly provides for the forum in which any disputes pertaining to payments or calculations under the promissory Note will be resolved. It sets out the mechanism for dispute resolution as well. These corporate parties chose this alternative dispute resolution

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

mechanism in the event they were unable to reach agreement about any calculations made under the terms of the subject promissory Note or payments made under the promissory Note. The agreement is as follows–

> In the event that the parties cannot resolve <u>any disagreement as to any amount(s) due</u> under this paragraph within a reasonable period of time, such amount(s) <u>will be determined by Deloitte & Touche LLP</u>, whose fees and expenses will be paid by the non-prevailing party and <u>whose determination will be final and binding</u> (emphasis added).

A valid agreement providing for an alternative forum to resolve any disputes about payments or calculations under the subject Promissory Note clearly exists between these two corporate entities. It is an agreement whereby expert accountants will assess and appraise whether the calculations and payment determinations were made accurately and correctly.

That is the whole of Plaintiff Prestige's suit. Prestige complains that it was not paid and that it disagrees with the calculations upon which the notice of a zero balance were made. The agreement provides that in such event the amounts "will be determined by Deloitte & Touche" whose determination will be "final and binding."

This arbitration agreement is contained in the very documents upon which Plaintiff Prestige here sues and is exhibited with Plaintiff's Complaint. It provides for a "final and binding" resolution of this claim. This Court's inquiry should end, once it has determined this single issue.[1]

_____

[1]"[Short] of authorizing trial by battle or ordeal, or more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes; parties are as free to specify idiosyncratic terms of arbitration as they are to specify any other terms in their contracts." <u>Baravati v.</u>

## FEDERAL LAW FAVORS ARBITRATION AND OTHER FORMS OF ALTERNATIVE DISPUTE RESOLUTION

Federal law recognizes the right of contracting parties to submit their disputes to an alternative dispute resolution forum and to agree to a final and binding resolution of their disputes in that alternative forum. See Federal Arbitration Act, 9 U.S.C. §1, et. seq., and Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). "The provisions of the Federal Arbitration Act manifest a 'liberal policy favoring arbitration agreements.'" Moses H.Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985). "By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213 (1985).

## ILLINOIS LAW LIKEWISE FAVORS ARBITRATION AGREEMENTS INCLUDING APPRAISAL AGREEMENTS AND OTHER FORMS OF ALTERNATIVE DISPUTE RESOLUTION AGREEMENTS

In this instance, the promissory Note (and related agreements) sued upon provide that the law of Illinois will apply.[2] Illinois law, like Federal (and Florida) law, approves and enforces all forms of alternative dispute resolution agreements and arbitration clauses.

---

Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 709 (7th Cir. 1994).

[2]Florida law recognizes the right of contracting parties to agree on the law to be applied to their disputes. Marque v. Fabbri, 493 So. 2d 437 (Fla. 1986); Dataline Corporation v. L.D. Mullins Lumber Co., 588 So. 2d 1078, 1079 (Fla. 4th DCA 1991).

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

Section 2(a) of the Illinois Uniform Arbitration Act provides that the court shall order parties to proceed with arbitration upon application of a party showing an agreement to arbitrate. See, Board of Managers of the Courtyards at the Woodlands Condominium Association v. Iko Chicago, Inc., 697 N.E. 2d 727, 729-730 (Ill. 1998). Only if the opposing party denies the existence of an arbitration agreement shall the Court proceed to determine the existence of such an agreement–and then only to the extent of determining whether the agreement exists, nothing more. Here, Plaintiff Prestige cannot deny the existence of the very agreement upon which it sues. Plaintiff has attached its agreement to the complaint.

The law of Illinois is the same as the Federal Arbitration Act--the Court is only to concern itself with whether an agreement exists to arbitrate the dispute in question. J & K Cement Construction, Inc. v. Montalbano Builders, Inc., 456 N.E. 2d 889, 894 (Ill. 2d App. Ct. 1983).

The Illinois courts have not mandated that the arbitration agreement contain any particular kind of wording and have consistently held fully enforceable various forms of arbitration agreements, such as appraisal clauses and similar alternative dispute resolution agreements under which parties submit controversies to an out-of-court settlement mechanism. Under Illinois law, such agreements are held to be as enforceable as standard arbitration clauses and have found other forms of final and binding dispute resolution agreements to be analogous to traditional arbitration clauses. Bailey v. Timpone, 389 N.E. 2d 1193, 1196 (Ill. 1979); General Casualty Co. v. Tracer Industries, Inc., 674 N.E. 2d 473, 420 (Ill. 4th App. Ct. 1995); Beard v. Mount Carroll

Mutual Fire Insurance Company, 561 N.E. 2d 116, 118 (Ill. 5th App. Ct. 1990).

In Beard v. Mount Carroll Mutual Fire Insurance Company, 561 N.E. 2d 116 (Ill. App. 1990)(copy attached), the plaintiff Beard brought suit in circuit court to enforce the terms of her property insurance. She alleged that her real property was totally damaged by a fire and that the property insurer had not paid upon her fire loss claim. The policy contained a clause with similarities to the clause here in suit, as follows:

> Appraisal—In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of the demand. The appraisers shall first select a competent and disinterested umpire.... [The] appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with the Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of the appraisal and umpire shall be paid by the parties equally.[3]

Based upon that clause, the Defendant insurer moved to dismiss the suit and to compel compliance with the appraisal process provided for by the insurance contract. The Court granted the motion to compel arbitration in accordance with the foregoing clause. "Defendant argues that the appraisal clause in the insurance policy is analogous to an arbitration clause, which is enforceable in a court of law and with which a court may compel compliance. We agree." The Court noted that before the Uniform Arbitration Act was adopted in Illinois, "agreements to submit future or anticipated disputes to

---

[3]The insurance policy also provided that no suit could be brought where the policy conditions were not first complied with.

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

arbitration were deemed void as depriving the individual citizen of his right to resort to the courts for the redress of grievances" [but that] since enactment of the Arbitration Act "parties may agree to submit a future controversy to arbitration and such an agreement is valid and enforcable in a court of law." The Court then held that it saw no reason to apply any different result to the "appraisal clause" contained in the insurance contract.

In yet another Illinois case–one closely analogous to the present suit--<u>Heiden v. Galva Foundry Co.</u>, 584 N.E. 2d 518, 519 (Ill. 3d App. Ct. 1991) (copy attached), it was held that where the value of a promissory note is based upon a valuation formula agreed to by the parties, the parties may agree, in their contract, to have any dispute as to such valuation resolved by an accounting firm. The same valuation arbiter was chosen in the parties agreement in <u>Heiden</u> as the parties here chose: Deloitte & Touche. In <u>Heiden</u>, the court recognized that this same accounting firm was one of the nation's largest accounting firms and an appropriate party to resolve a dispute about valuation, calculations, and payments under the Promissory Note.

For the same reasons and upon the same law, the identical result should follow here. These parties chose to apply Illinois law to their agreement, and Illinois courts have consistently approved of appraisal proceedings as a form of alternative dispute resolution and arbitration and have without exception recognized such clauses as serving the same purpose as arbitration proceedings. "When as here, parties agree to have value affixed by an appraisal, they must abide by their own agreement." Illinois courts have liberally construed the scope of what agreements will be treated as analogous to arbitration clauses. One Illinois court has stated

> [t]his court has long approved lease agreements to submit
> questions of valuation to appraisement or arbitration and has
> refused to interfere with the arbitrators' valuation absent
> fraud or mistake, even though the agreements were not
> technically classified as arbitration agreements and were not
> governed by all the rules applicable to arbitration.

Bailey v. Timpone, 389 N.E. 2d at 1196. See also General Casualty Company v.

Tracer Industries, Inc., 674 N.E. 2d 473, 475 (Ill. 4th App. Ct. 1996) wherein the court

stated that even though "appraisal" clauses do not fall squarely under the Illinois

Arbitration Act, such clauses are nonetheless fully enforceable where the parties have

designated in their contract this mechanism for resolving their disputes. The court

observed that any attempted judicial modification would deprive the parties of that

choice.

"[I]t is a well established principal that arbitration is a favored alternative to

litigation by state, federal and common law because it is 'a speedy, informal, and

relatively inexpensive procedure for resolving controversies arising out of commercial

transactions.'" Board of Managers of the Courtyards at the Woodlands Condominium

Association, 697 N.E. 2d at 730. The Illinois Supreme Court has held that once a

contract containing a valid arbitration clause has been executed, the parties thereto are

irrevocably committed to arbitrate all disputes arising thereunder. A denial of a party's

request for arbitration would make arbitration clauses meaningless and would deny the

parties the right to their contractually chosen method of dispute resolution. Board of

Managers of the Courtyards at the Woodlands Condominium Association, 697 N.E. 2d

at 731.

-7-

## THIS CLAIM IS WITHIN THE PARTIES' ARBITRATION APPRAISAL AGREEMENT

The language of the subject alternative dispute resolution clause unequivocally provides that "any disagreement" as to the "Account Revenues, the Customer Retention Percentage and the principal amount of any payment due hereunder", referring to the Note, "will be determined by Deloitte & Touche LLP" and that its determination will be "final and binding."  The contrary interpretation advanced by PRESTIGE attempts to confuse the plain meaning of these words.  The parties have agreed that an independent and well respected accounting firm shall be the final arbitrator of Account Revenues, the Customer Retention Percentage and consequently the principal amount of any payment due under the Note.  That after-the-fact one of the parties seeks to put forth a different views of the meaning of the contractual language does not render the contract ambiguous.  Beard v. Mount Carroll Mutual Fire Insurance Company, 561 N.E. 2d at 119; Zurich Midwest, Inc. v. St. Paul Fire & Marine Insurance Co., 513 N.E. 2d 59, 60 (Ill. 3d App. Ct. 1987).

The United States Supreme Court has held that arbitration agreements are entered by consent and therefore may be structured as the parties see fit.  Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 479 (1989). Here the parties have simply agreed to have one of the nation's largest accounting firms arbitrate the dispute that is the subject of this action.

## THE UNCONSCIONABILITY ARGUMENT

As a last ditch effort, Plaintiff PRESTIGE argues that the Promissory Note itself is "unconscionable," seemingly trying to disavow the very agreement upon which it sues. This argument is contradicted by the terms of the buy-sell Letter Agreement also attached to Plaintiff's complaint.  Under this commercial purchase and sale of assets between

corporations, it is shown that Plaintiff PRESTIGE has already received $1.05 million. The Promissory Note, which is the subject of this suit, merely contemplates the potential of a payment of additional monies—under circumstances spelled out in the parties' agreement. This potential payment is contingent upon BURNS INTERNATIONAL "retaining" a specified percentage of the client base which was one of the assets represented by Plaintiff PRESTIGE to exist and sold by PRESTIGE to BURNS INTERNATIONAL (hence the Note terminology "Customer Retention Percentage").

The essence of this suit is that PRESTIGE complains that it was not paid the contingent sums provided for in the Note and that PRESTIGE disagrees with the calculation upon which BURNS INTERNATIONAL determined that no additional monies were due. This suit in no way alleges that PRESTIGE was not paid as provided under the parties' agreement.

A dispute about how the customer retention percentage was calculated is ideal for the alternative dispute resolution mechanism chosen by these parties. What better arbiter of the calculation of dollars and cents than the well-respected accounting firm of DeLoitte & Touche.

### THE AGREEMENT DOES NOT IMPLICATE DUE PROCESS RIGHTS

Arbitration is a private proceeding arranged by a voluntary contractual agreement of the parties. Davis v. Prudential Securities, Inc., 59 F. 3d 1186, 1191 (11th Cir. 1995). That old due process argument has been soundly rejected by the existence of laws approving arbitration as an alternative method to resolve disputes. The Illinois cases cited above reject any notion that due process is denied where the parties voluntarily choose a non-judicial means to resolve their disagreements.

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

## CONCLUSION

The arguments advanced by PRESTIGE are premature. PRESTIGE's arguments pertain to issues which are properly raised after the arbitration process has produced a final determination. Only at such time may PRESTIGE raise issues pertaining to the arbitration process. In sum, the issue before this Court is limited to whether an arbitration agreement, an agreement to use a different mechanism and different forum for dispute resolution, exists between these corporate entities. As the Supreme Court has observed, "the Federal Arbitration Act leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

WHEREFORE, upon the foregoing, Defendant BURNS INTERNATIONAL prays that this court enter its order compelling the parties to proceed with arbitration of the disputes raised in this action by applying for a final and binding resolution of this dispute with Deloitte & Touche, as provided for in the agreement between the parties, and dismiss this action, or in the alternative stay this action.

Respectfully submitted,

Sherryll Martens Dunaj
Florida Bar #136707
John L. Urban
Florida Bar No.: 175307
Martens Dunaj Marlowe Davis & Marlowe
201 South Biscayne Boulevard
Miami Center/Suite 880
Miami, Florida 33131
(305) 373-9977
(305) 373-8877 fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail this 20th day of December, 1999 to: **Robert Pasin,** Attorney for Plaintiff, 3300 University Drive, Suite 601, Coral Springs, Florida 33066.

Sherryll Martens Dunaj

Martens Dunaj Marlowe Davis & Marlowe
Miami Center Suite 880 • 201 South Biscayne Boulevard • Miami, Florida 33131 • (305) 373-9977

561 N.E.2d 116 printed in FULL format.

VELMA BEARD, Plaintiff-Appellee, v. MOUNT CARROLL MUTUAL FIRE INSURANCE
COMPANY, Defendant-Appellant

No. 5-90-0092

Appellate Court of Illinois, Fifth District

203 Ill. App. 3d 724; 561 N.E.2d 116; 1990 Ill. App. LEXIS 1252; 148 Ill. Dec. 810

August 15, 1990, Filed

**PRIOR HISTORY:** [***1]
Appeal from the Circuit Court of Jasper County; the
Hon. Dennis M. Huber, Judge, presiding.

**DISPOSITION:** Reversed and remanded with direc-
tions.

**CORE TERMS:** appraisal, appraiser, appraisal clause,
insurance policy, arbitration, total loss, umpire, en-
forceable, appraise, insured, Uniform Arbitration Act,
arbitration clause, amount of loss, arbitrators, am-
biguous, destroyed, motion to compel arbitration, ac-
tual cash value, disinterested, appraisal proceeding, ap-
praisement, photographs, answered, resort, motion to
dismiss, insured property, proper measure, real estate,
separately, ambiguity

**COUNSEL:** Robert M. Hopkins, of Gosnell, Benecki,
Borden & Enloe, Ltd., of Lawrenceville, for appellant.

Lawrence Eaton, of Eaton & Eaton, of Newton, for
appellee.

**JUDGES:** Justice Welch delivered the opinion of the
court. Chapman and Howerton, JJ., concur.

**OPINIONBY:** WELCH

**OPINION:** [*726] [**117]

JUSTICE WELCH delivered the opinion of the court:

On June 7, 1989, plaintiff, Velma Beard, filed a com-
plaint in the circuit court of Jasper County against defen-
dant, Mount Carroll Mutual Fire Insurance Company.
The complaint alleges that defendant had insured plain-
tiff against loss or damage by fire to a certain rental
house and its contents which were, on September 5,
1988, totally destroyed by fire. The limits of the insur-
ance policy were $ 20,000 for damage to the real estate
and $ 3,000 for damage to the contents. The complaint
alleges that the total loss sustained by plaintiff exceeded

$ 23,000, but that no part of the $ 23,000 had been paid
by defendant to plaintiff.

Attached to the complaint is a copy of the policy of
insurance. That policy provides, in part:

"Appraisal.    [***2] In case the insured and this
Company shall fail to agree as to the actual cash value
or the amount of loss, then, on the written demand of
either, each shall select a competent and disinterested
appraiser and notify the other of the appraiser selected
within twenty days of such demand. The appraisers
shall first select a competent and disinterested umpire;
and failing for fifteen days to agree upon such umpire,
then, on request of the insured or this Company, such
umpire shall be selected by a judge of a court of record
in the state in which the property covered is located. The
appraisers shall then appraise the loss, stating separately
actual cash value and loss to each item; and, failing to
agree, shall submit their differences, only, to the umpire.
An award in writing, so itemized, of any two when filed
with this Company shall determine the amount of actual
cash value and loss. Each appraiser shall be paid by the
party selecting him and the expenses of appraisal and
umpire shall be paid by the parties equally.

* * *

Suit. No suit or action on this policy for the recovery
of any claim shall be sustainable in any court of law or
equity unless all the requirements of this policy [***3]
shall have been complied [*727] with, and unless com-
menced within twelve months next after inception of the
loss."

On July 11, 1989, defendant filed a motion to dismiss
the complaint under section 2 -- 619 of the Code of Civil
Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2 -- 619)
alleging that defendant had made demand upon plain-
tiff for appraisal, that plaintiff had refused said demand,
and that plaintiff's suit was barred by the foregoing pro-
visions of the insurance policy. On January 11, 1990,

defendant filed a motion to compel arbitration and stay court proceedings, arguing that the appraisal provision of the insurance policy is analogous to an arbitration clause which is enforceable, and which the court is empowered to enforce by staying further court proceedings and compelling compliance therewith.

At hearing on the motion on January 11, 1990, the circuit court of Jasper County denied defendant's motion to dismiss and its motion to compel arbitration and stay court proceedings, finding that the appraisal provision of the policy did not apply in the case of a total loss where there was no property left to appraise. This ruling is reflected in a docket entry order which [***4] [**118] states, "because 'total loss' is claimed, the provision of the policy providing for appraisal and arbitration does not apply under these circumstances." Defendant's notice of appeal was filed on February 8, 1990.

Defendant argues initially that this court has jurisdiction over this appeal under Supreme Court Rule 307(a)(1), which provides that an appeal may be taken from an interlocutory order granting, modifying, refusing, dissolving or refusing to dissolve or modify an injunction. (107 Ill. 2d R. 307(a)(1).) Plaintiff does not contest this point, and, in any event, we agree with defendant. The denial of a stay by a trial court is treated as a denial of a request for a preliminary injunction, which is appealable under Rule 307(a)(1). *Allied Contracting Co. v. Bennett (1982), 110 Ill. App. 3d 310, 311, 442 N.E.2d 326, 327.*

Defendant next argues that the appraisal clause in the insurance policy is analogous to an arbitration clause, which is enforceable in a court of law and with which a court may compel compliance. We agree. Prior to adoption of the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. [***5] 101 et seq.), agreements to submit future or anticipated disputes to arbitration were deemed void as depriving the individual citizen of his right to resort to the courts for the redress of grievances. (*Horwath v. Parker (1979), 72 Ill. App. 3d 128, 132, 390 N.E.2d 72, 76.*) However, the Uniform Arbitration Act now provides that parties may agree to submit a future controversy to arbitration and that such an agreement is valid and enforceable in a court of law. [*728] We see no reason to apply a different policy or different reasoning to an appraisal clause such as the one in the instant contract.

Although an appraisal clause does not contain the same procedural aspects as contained in the Uniform Arbitration Act, it is nevertheless an agreement to submit a future controversy to an out-of-court settlement. Such agreements are now deemed valid. Indeed, some cases have treated an appraisal clause similarly to an

arbitration clause. In *Hill v. Mercury Record Corp. (1960), 26 Ill. App. 2d 350, 356, 168 N.E.2d 461, 464*, it was held that a binding agreement relating to future controversies [***6] may be made requiring that the determination of some fact be made by arbitrators or appraisers as a condition precedent to the bringing of the suit. In *Bailey v. Timpone (1979), 75 Ill. 2d 539, 389 N.E.2d 1193*, an appraisal proceeding was recognized as serving the same purpose as an arbitration proceeding, and was approved of. There, the court stated:
"The [Uniform Arbitration] Act is not directly applicable since the lease did not technically call for arbitration in that it made no provision for a quasi-judicial determination of any dispute concerning rent on renewal, but called instead for an 'appraisement,' an application of the arbitrators' skill and knowledge to determine the fair cash rental value of the premises. [Citations.] Nonetheless, the salutary purposes for permitting an informal mechanism to resolve private disputes finally and expeditiously are served here by limiting judicial intercession in the decision of the arbitrators. * * *

* * * Although such agreements may call for less formal proceedings than arbitrations, 'both provide a contractual method for settling questions in a less complicated and expensive manner [***7] than through court adjudication. * * * [W]hen as here, parties agree to have value affixed by an appraisal, they must abide by their own agreement * * *.' [Citation.]" (*Bailey, 75 Ill. 2d at 545-46, 389 N.E.2d at 1196.*)
Similarly, in *Grace Evangelical Lutheran Church v. Lutheran Church -- Missouri Synod (1983), 118 Ill. App. 3d 151, 454 N.E.2d 1038*, an appraisal proceeding was recognized as a form of arbitration. We thus conclude that the appraisal clause in the insurance policy was valid and enforceable in a court of law.

The next issue before us, then, is whether that clause, although valid and enforceable, applies in the case of a total loss of the insured property, where that property [**119] is no longer available to appraise. This question is answered, we think, by construction of the contract.

An arbitration agreement is construed in the same manner [*729] as any other agreement; however, it must be remembered that courts regard arbitration agreements with favor. (*Schroud v. Van C. Argiris & Co. (1979), 78 Ill. App. 3d 1092, 1096-97, 398 N.E.2d 103, 106.*) [***8] A court may resort to rules of construction only where the language of the agreement is ambiguous. (*In re Estate of Chaitlen (1989), 179 Ill. App. 3d 287, 291, 534 N.E.2d 482, 484.*) Where the terms of an agreement are clear and unambiguous, they will be given their natural and ordinary meanings, and the intent of the parties must be determined from the language of the agreement

alone. (*Reynolds v. Coleman* (1988), *173 Ill. App. 3d 585, 593, 527 N.E.2d 897, 902.*) A contract is ambiguous when it is reasonably capable of being understood in more senses than one because of indefiniteness of language or expression, or due to its having a double or multiple meaning. (*Zurich Midwest, Inc. v. St. Paul Fire & Marine Insurance Co.* (1987), *159 Ill. App. 3d 961, 963, 513 N.E.2d 59, 60.*) The mere fact that the parties have different views of the meaning of the contract language does not render the contract ambiguous. *Zurich Midwest, Inc., 159 Ill. App. 3d at 963, 513 N.E.2d at 60.*

We find no ambiguity in the language [***9] of the appraisal clause in the instant insurance policy. The policy provides that plaintiff is insured "to the extent of the actual cash value of the property at the time of loss," but not to exceed the dollar limitation of the policy ($ 20,000 for real estate; $ 3,000 for personalty). The appraisal clause provides that, in the event the parties cannot agree on the actual cash value of the property or the amount of loss, appraisers shall be appointed. The appraisers are to appraise the loss, stating separately the actual cash value of the property and the loss. We see nothing in this language which creates an ambiguity or leads us to believe that this procedure was not intended to, or cannot, be followed in the event of a total loss.

We recognize, as did the trial court, that where there has been total destruction of the property, as in the instant case, the appraisal may be made more difficult because there is no property left to view. We do not think, however, that this precludes appraisal. Information as to the value of the property may be obtained by the appraisers from other sources. For example, the owner of the property, as well as its tenant or neighbors, may have knowledge [***10] of the condition of the premises prior to the fire. There may be recent photographs of the premises. The appraisers themselves may even have had prior knowledge of the value of the property.

Our decision herein is supported by decisions of other jurisdictions. In *Drescher v. Excelsior Insurance Co.* (*D. N.J. 1960*), *188 F.Supp. 158,* [*730] the United States District Court for the District of New Jersey held that a similar appraisal clause applied in the case of a total loss. The court pointed out that, regardless of whether any property remained to be viewed, that would not affect the giving of evidence by witnesses as to their knowledge of the value of what was destroyed. In *Stout v. Phoenix Assurance Co.* (*N.J. 1904*), *65 N.J. Eq. 566, 56 A. 691,* the court held that a similar appraisal clause would apply to a total loss even though there was no property left to view. The court pointed out that information as to the value of destroyed property may

be obtained from previous knowledge of the property by the appraisers themselves, or it may be afforded by a description of the property contained in the [***11] proof of loss, or from measurements, plans, photographs, etc. The court stated, "The form of the clause seems to be broad enough to include an appraisement for all loss, for its language is that, in the event of disagreement as to the amount of loss (clearly all the loss), the same shall be ascertained by two competent and disinterested appraisers." *65 N.J. Eq. at 568, 56 A. at 692.* See also *Chippewa Lumber Co. v. Phenix Insurance Co.* (*Mich. 1890*), *44 N.W. 1055.*

We find that the appraisal clause does apply in the case of a total loss of the [**120] insured property, and that the trial court erred in finding otherwise. We therefore reverse the order of the trial court denying defendant's motion to compel arbitration and stay court proceedings and remand this cause with directions to the circuit court of Jasper County to enter an order compelling plaintiff to comply with the appraisal provisions of the insurance policy and staying further court proceedings pending completion of the appraisal.

In her answer brief, plaintiff fails to respond to the arguments raised by defendant, but instead raises [***12] different points upon which she asks us to affirm the decision of the trial court. Plaintiff argues that defendant's appraiser is attempting to use an improper measure of damages, i.e., fair market value of the property rather than replacement cost minus depreciation, that defendant has waived its rights under the appraisal provision of the policy by acting in bad faith in insisting on using an improper measure of damages, and that the real dispute between the parties is the proper measure of damage, a dispute which does not fall within the appraisal provision. These arguments were not raised before the trial court, and, although we can affirm the decision of the trial court based on any grounds appearing in the record (*Alexander v. DePaepe* (*1986*), *148 Ill. App. 3d 831, 836, 499 N.E.2d 1065, 1068*), there is insufficient evidence or argument in the record for us to affirm on this basis. In any event, it appears that [*731] the proper measure of damages is a question to be answered, at least initially, by the appraisers and umpire. See *Bailey v. Timpone* (*1979*), *75 Ill. 2d 539, 389 N.E.2d 1193.* [***13]

For the foregoing reasons the judgment of the circuit court of Jasper County is reversed and this cause is remanded with directions.

Reversed and remanded with directions.

CHAPMAN and HOWERTON, JJ., concur.

13TH CASE of Level 1 printed in FULL format.

RAY F. HEIDEN, Plaintiff-Appellee v. GALVA FOUNDRY CO., Defendant-Appellant

No. 3-91-0550

APPELLATE COURT OF ILLINOIS, THIRD DISTRICT

223 Ill. App. 3d 163; 584 N.E.2d 518; 1991 Ill. App. LEXIS 2164; 165 Ill. Dec. 339

December 24, 1991, Filed

SUBSEQUENT HISTORY: [***1]

Released for Publication January 27, 1992. As Corrected February 25, 1992.

PRIOR HISTORY: Appeal from the Circuit Court of the Fourteenth Judicial Circuit, Henry County, Illinois, No. 90-L-1, The Honorable Eward Keefe, Judge Presiding

DISPOSITION: Reversed and remanded with direction.

CORE TERMS: arbitration, balance sheet, book value, arbitrator, successor, agreement to arbitrate, arbitrate, formula, promissory note, Illinois Uniform Arbitration Act, motion to compel arbitration, arbitration agreement, valuation, merged, principal amount, accounting firm, parties agreed, accounting, obligated, submitted to arbitration, arbitration clause, purchase price, common stock, appointed, unaudited, utilized, presumed, assigned

COUNSEL: APPELLANT ATTORNEY: Mr. James E. Konsky, Vonachen, Lawless, Trager & Slevin, 200 N.E. Adams Street, Suite 309, Peoria, Illinois 61602-1260, (309) 676-8986, PARTY: Galva Foundry Co., James E. Konsky (argued)

APPELLEE ATTORNEY: Mr. Dean B. Rhoads, Sutkowski & Washkuhn Associates, 560 Jefferson Bank Building, Peoria, Illinois 61602, (309) 673-4500, ATTORNEY: Mr. Edwin L. Durham, Sutkowski & Washkuhn, Ltd., 560 Jefferson Bank Building, Peoria, Illinois 61602, (309) 673-4500, PARTY: Heiden, Ray F., Edwin L. Durham (argued)

JUDGES: Haase, MC CUSKEY, SLATER

OPINIONBY: HERMAN S. HAASE

OPINION: [**519] [*163] Justice Haase delivered the opinion of the Court.

The plaintiff, Ray Heiden, sold his controlling interest in the Galva Foundry Company (the Company) to the defendant, the Galva Foundry Acquisition Corporation (Galva). The purchase price was based upon a valuation formula which utilized the presumed net book value of the Company. The formula and details of the transaction [***2] were set forth in the Acquisition and Merger Agreement (the Agreement) which provided that disputes over the closing balance sheet [*164] would be submitted to arbitration. Deloitte, Haskins & Sells, one of the nation's largest accounting firms, was designated to act as the parties' arbitrator. After the sale, the firm of Deloitte, Haskins & Sells merged with Touche Ross, also a large national accounting firm. When a dispute arose between the parties over the amount due under the contract, Galva filed an action for declaratory judgment in Federal District Court alleging that it was entitled to certain set-offs against amounts owed to Heiden. The Federal District Court dismissed for want of diversity jurisdiction. The Seventh Circuit Court of Appeals affirmed.

Heiden then brought the present breach of contract action in the Circuit Court of Henry County. In response, Galva filed a motion to compel arbitration and stay all judicial proceedings pending the conclusion of arbitration. Heiden argued that since the firm of Deloitte, Haskins & Sells was chosen by the parties to arbitrate their disputes, and the firm no longer existed as contemplated by the parties' agreement, he was no longer obligated [***3] to arbitrate. The [**520] trial court agreed and denied Galva's motion to compel arbitration. We reverse.

On April 22, 1988, an Acquisition and Merger Agreement was entered into by Heiden and the present owners of the Galva Foundry Co. In order to arrive at a purchase price for Heiden's common stock, the parties agreed to use a particular valuation formula. In summarized form, the valuation formula provided that Galva's issued and outstanding common stock would be valued at $ 683,280 subject to certain adjustments provided in the Acquisition and Merger Agreement. The $ 683,280 figure was based on the assumption that the net book value of Galva Foundry Company was $ 954,120 as of 12:01

223 Ill. App. 3d 163, *164; 584 N.E.2d 518, **520;
1991 Ill. App. LEXIS 2164, ***3; 165 Ill. Dec. 339

a.m. April 16, 1988. The figure of $ 954,120 was de-
rived from an unaudited balance sheet of the Company
dated March 31, 1988. If the actual net book value of
the Company as of the April 15, 1988, date exceeded $
954,120, Heiden would be entitled to additional compen-
sation for his shares (according to the formula contained
in the Acquisition and Merger Agreement), and if the
actual net book value was less than $ 954,120, Heiden
would be entitled to less compensation. In order to test
the accuracy of [***4] the $ 954,120 assumption, the par-
ties agreed that a closing balance sheet would be prepared
after the closing which would reflect the net book value
of the Company as of April 15, 1988. The closing bal-
ance sheet was prepared by Schumaker, Romenesko &
Associates, Certified Public Accountants.

Upon the merger of Galva Foundry Acquisition
Corporation into Galva Foundry Company, Heiden re-
ceived a cash payment of $ 125,000 and a promissory
note from Galva Foundry Company. The promissory
[*165] note was in the principal amount of $ 524,356.98
and provided for monthly installment payments of prin-
cipal and interest. The principal amount of the origi-
nal promissory note was based upon the valuation for-
mula which utilized the presumed net book value of the
Company of $ 954,120. Thus, each share of Heiden's
common stock was assigned a value based upon the net
book value of the Company being $ 954,120. This value
is referred to in the Agreement as the Provisional Per
Share Amount. The closing balance sheet prepared by
Schumaker, Romenesko & Associates reflected that the
actual net book value of Galva Foundry Company on April
15, 1988, was $ 248,654 less than the net book value of
the Company as reflected [***5] on the unaudited balance
sheet on March 31, 1988. As a result, the Company com-
puted that the principal amount of the promissory note
delivered to Heiden at closing should be reduced by $
230,490.12.

The Acquisition and Merger Agreement provided that
the closing balance sheet "shall be prepared in accordance
with generally accepted accounting principles applied on
a basis consistent with past practice, and based upon a
physical inventory to be conducted by representatives of
Buyer and the Company as of the close of business on
April 15, 1988." The Agreement further provided that the
closing balance sheet would be prepared within 60 busi-
ness days following the effective date and that Heiden
would be provided all work papers used by the accoun-
tants in connection with the preparation of the closing bal-
ance sheet. The Agreement provided that Galva Foundry
Company would then deliver to Heiden a copy of the
closing balance sheet together with an officer's certificate
stating that the closing balance sheet had been prepared in
accordance with the Agreement. Finally, the parties pro-

vided that disagreements regarding the closing balance
sheet would be resolved by arbitration. The Agreement
[***6] provided that the firm of Deloitte, Haskins & Sells
"shall" act as the parties' arbitrator. The Acquisition and
Merger Agreement further provided:

"Governing Law. This Agreement shall be construed and
interpreted according to the laws of the State of Wisconsin
without reference to the rules of conflicts of law."

After a hearing on Galva's motion to compel arbitra-
tion, and after reviewing various documents related to
these transactions, the trial court ruled that the parties
agreed that Illinois law would govern their transaction.
The court based its ruling on the fact that the parties' non-
competition [**521] agreement, non-negotiable promis-
sory note and general business security agreement all
specifically recited that they "shall" be construed in ac-
cordance with the laws of the State of Illinois. [*166] The
court also found that the parties, by their conduct in the
lawsuit, had agreed to have their agreement determined
by Illinois law. The court relied on the fact that the case
was pending for some period of time without either side
even mentioning the Wisconsin provision. Clearly, this
ruling is supported by the evidence. See *Yates v. Doctor's
Associates, Inc.*, 193 Ill. App. 3d 431, 438, 549 N.E.2d
1010, (5th Dist. 1990). [***7]

A number of issues were presented to the court dealing
with choice of law and questions of federal preemption
under the Federal Arbitration Act. Because of our dis-
position of this case, we do not need to deal further with
these questions.

The trial court, after finding that Illinois law applied to
the agreement to arbitrate as contained in the Acquisition
and Merger Agreement, then found that the firm of
Deloitte, Haskins & Sells no longer existed as contem-
plated by the Illinois Uniform Arbitration Act (Chap. 10,
Sec. 101 et seq., Ill. Rev. Stat., 1989). The Act provides,
in pertinent part:

"When an arbitrator appointed fails or is unable to act,
his successor shall be appointed in the same manner as
the original appointment. If the method of appointment
of arbitrators is not specified in the agreement and can-
not be agreed upon by the parties, the entire arbitration
agreement shall terminate."
Chap. 10, Sec. 103, Par. 3, Ill. Rev. Stat., 1989.

Based upon the above cited statute and the trial court's
finding that Deloitte, Haskins & Sells no longer existed,
the trial court ruled that Heiden was no longer obligated
to arbitrate. The court, in so doing, relied on the fact
that there [***8] was no provision for naming of a suc-
cessor arbitrator in the Agreement. The court's reasoning

2.3 Ill. App. 3d 163, *166; 584 N.E.2d 518, **5.1;
1991 Ill. App. LEXIS 2164, ***8; 165 Ill. Dec. 339

was as follows: (1) the firm of Deloitte, Haskins & Sells was selected by the parties to arbitrate their disputes; (2) Deloitte, Haskins & Sells no longer existed because it merged with the firm of Touche Ross; (3) the parties failed to name a successor or method of selecting a successor; and (4) the parties cannot agree on a successor. Although the trial court's reasoning possesses some syllogistic merit, we are of the opinion that the Illinois Uniform Arbitration Act was not intended to be interpreted in a rigid or formalistic manner.

The Illinois Uniform Arbitration Act was enacted to provide for an easier, more expeditious and less expensive manner of resolving disputes than by litigation. (*Board of Trustees of Community College Dist. 508 v. Cook County College Teachers Union Local 1600 (1981), 102 Ill. App. 3d 681, 430 N.E.2d 249.*) The primary purpose of an agreement to arbitrate is to enable the parties to secure a speedy [*167] determination of their differences without conforming to the strict formalities necessary in a court of law. *Wilhelm v. Universal Underwriters Insurance Co. (1978), 60 Ill. App. 3d 894, 377 N.E.2d 62.* [***9]

It would elevate form over substance and would be contrary to the overall purpose and goals of arbitration to hold that an agreement to arbitrate is inoperative because the national accounting firm which the parties chose merged with another national accounting firm. We decline to give this narrow interpretation to the act. It is very clear from the record and from the responses of counsel during oral argument that this was not an agreement to arbitrate that was entered into only because a specific named individual was to be the arbitrator. Deloitte, Haskins & Sells and its successor are both large national accounting firms. The actual person to serve as arbitrator would be assigned by the firm. Accordingly, we hold that the trial court erred when it found that the parties were not obligated to arbitrate because the firm of Deloitte, Haskins & Sells had merged and no successor was named. We further hold that the successor firm of Deloitte & Touche is the firm contemplated by the parties to serve as arbitrator in this cause.

[**522] The defendant-appellant, Galva Foundry Company, also alleges that the trial court erred in ruling as an additional reason to deny arbitration, that [***10] the issues raised by Heiden in the State court action must relate to the issue which is covered by the arbitration clause. In other words, the trial court denied arbitration because the motion to compel arbitration did not deal with issues which had been raised in Heiden's complaint. We agree with the Company that the trial court erred on this issue also. Section 102 (c) and (d) of the Illinois Uniform Arbitration Act provides:

"(c)

If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subdivision (a) of this Section, the application shall be made therein. Otherwise and subject to Section 17,2 the application may be made therein. Otherwise and subject to 17,2, the application may be made in any circuit court.
(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such [***11] stay. (Emphasis supplied) Chap. 110, Sec. 102 (c) (d), Ill. Rev. Stat., 1989 [*168] .

Clearly, under these sections all that is required to trigger arbitration is that the issue be involved in the action or proceeding pending. It does not have to be the issue that was raised in plaintiff's initial lawsuit. Under Illinois law, parties who execute a contract containing a valid arbitration clause are irrevocably committed to arbitrate all disputes clearly arising under the agreement. (*TDE, Ltd. v. Israel (1989), 185 Ill. App. 3d 1059, 541 N.E.2d 1281.*) In *Donaldson, Lufkin & Jennette v. Barr (1988) 124 Ill. 2d 435, 449, 530 N.E.2d 281, 287,* the Illinois Supreme Court stated:

"It was intended, under the Uniform Arbitration Act, on an Application to Compel or Stay Arbitration, under Section 2 of the Act, that the sole question for the Court to determine is whether there was an agreement to arbitrate. [Citation.] If it is obvious that there was an agreement to arbitrate the dispute in question, that is, if the dispute clearly falls within the scope of the arbitration agreement, the court should order arbitration."

Doubts regarding [***12] the scope of arbitrable issues ought to be resolved in favor of arbitration. (*Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Howells v. Hoffman, 209 Ill. App. 3d 1004, 568 N.E.2d 934 (1991).*) It is not necessary for the parties to an arbitration agreement to be able to solve all disputes between them at arbitration. Rather, the court must give effect to the arbitration agreement and require those issues to be arbitrated which are covered by the agreement. In this case, the Acquisition and Merger Agreement provided that "any unresolved disagreement between the Surviving Corporation [(Galva)] and any of the Company's former shareholders [(Heiden)] as to whether the Closing Balance Sheet has been prepared as required by this sec-

2~~ Ill. App. 3d 163, *168; 584 N.E.2d 518, **5~~,
1991 Ill. App. LEXIS 2164, ***12; 165 Ill. Dec. 339

tion," shall be submitted to arbitration.

Accordingly, the decision of the Circuit Court of Henry County denying the Motion to Compel Arbitration is reversed and this 'cause is remanded to the trial court with directions that arbitration should be compelled to the extent required by the agreement of the parties.

Reversed [***13] and remanded with direction.

MC CUSKEY, J. and SLATER, J., concurring.

389 N.E.2d 1193 printed in FULL format.

PHILLIP W. BAILEY et al., Appellants, v. RAYMOND TIMPONE et al. (Raymond Timpone, Indiv. and as Ex'r, Appellee)

No. 51308

Supreme Court of Illinois

75 Ill. 2d 539; 389 N.E.2d 1193; 1979 Ill. LEXIS 304; 27 Ill. Dec. 785

May 18, 1979, Filed

PRIOR HISTORY: [***1]

Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Champaign County, the Hon. Roger H. Little, Judge, presiding.

DISPOSITION: Appellate court reversed; circuit court affirmed.

CORE TERMS: arbitrator, rent, lease, renewal, rental, arbitration, retailers, neutral arbitrator, occupation tax, calculated, collected, amounts collected, interpreting, fixing, Occupation Tax Act, conclusively, appraisement, assigned, lessee, sales tax, technically, valuation, annually, binding, monthly

COUNSEL: John T. Phipps, of Phipps & Evans, of Champaign, for appellants.

Winkelmann and Winkelmann, of Urbana, for appellees.

JUDGES: Mr. Justice KLUCZYNSKI delivered the opinion of the court.

OPINIONBY: KLUCZYNSKI

OPINION: [*541] [**1194] Plaintiffs are lessees under a lease dated August 31, 1974, and assigned to them effective February 24, 1975. At the end of 1975, plaintiffs gave notice of the exercise of their option to renew the lease for 10 years. Under the terms of the lease the determination of the amount of rent to be paid on renewal was submitted to binding arbitration. The issue, as presented by the parties, is whether the income on which plaintiffs' rent is to be calculated includes funds received or charges added to prices on account of plaintiffs' tax liability under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, pars. 440 to 453).

On motion of plaintiffs, the circuit court of Champaign County entered an [***2] order, consistent with the expressed understanding of a majority of the arbitrators, that funds collected for payment of the retailers' occupation tax should not be included in calculating the percentage rent. The appellate court, with one justice [*542] dissenting, reversed and remanded in a Rule 23 order (58 Ill. 2d R. 23). (61 Ill. App. 3d 1111.) We allowed plaintiffs' petition for leave to appeal.

Because the parties could not agree on the amount of rent to be paid on renewal, arbitration, as authorized by the lease, had become necessary. Pursuant to the terms of the lease, each party chose one arbitrator. They in turn were to jointly choose a third, but since they were unable to do so, the circuit court, on motion of plaintiffs as provided by the lease, appointed a neutral arbitrator. The arbitrators were to be "qualified by recent experience in dealing with rental properties in the Champaign Urbana area" and were to be either "licensed real estate brokers a substantial part of whose business involves the sale or lease of commercial property" or "experienced appraisers, a substantial part of whose business consists of fixing rental values of commercial real estate." [***3]

The lease expressly provided that "[t]he decision of the majority of the arbitrators shall be final, conclusive, and binding on the parties with respect to the rental for the extended term, except for fraud." The only specific guidance the lease gave concerning the amount of rent to be paid on renewal was the establishment of a minimum rent of $ 1,500 per month.

As directed, the arbitrators met and, following a presentation by the parties' arbitrators of their conclusions and an open discussion "of all factors considered relevant [**1195] to the estimation of the fair cash rental value of the premises," reached a unanimous conclusion as to the rent on renewal. The percentage rent was set at 7% of "all Gross Income, from the premises, over and in excess of $ 300,000.00 annually," with a minimum of $

'ɔ Ill. 2d 539, *545; 389 N.E.2d 1193, **1196,
1979 Ill. LEXIS 304, ***8; 27 Ill. Dec. 785

than the courts, were entitled to clarify the term in order to complete the function which the parties had assigned to them: to finally and conclusively establish the rent. See *La Vale Plaza, Inc. v. R. S. Noonan, Inc. (3d Cir. 1967), 378 F.2d 569, 573, 37 A.L.R.3d 189, 196* (applying Pennsylvania law).

This court has long approved lease agreements to submit questions of valuation to appraisement or arbitration and has refused to interfere with the arbitrators' valuation absent fraud or mistake, even though the agreements were not technically classified as arbitration agreements and were not governed by all the rules applicable to arbitration. (See, e.g., *Norton v. Gale (1880), 95 Ill. 533, 540-41; Sebree [***9] v. Board of Education (1912), [*546] 254 Ill. 438, 446.*) The Supreme Court of Arizona too has affirmed the principle that the scope of review with respect to agreements such as the one here should be no broader than that which applies to arbitrations. Although such agreements may call for less formal proceedings than arbitrations, "both provide a

contractual method for settling questions in a less complicated and expensive manner than through court adjudication. * * * [W]hen, as here, parties agree to have value affixed by an appraisal, they must abide by their own agreement * * *." *Hirt v. Hervey (1978), 118 Ariz. 543, 545, 578 P.2d 624, 626.*

The parties here agreed that the arbitrators were to have binding authority to conclusively and finally establish the fair cash rental value of the premises through the exercise of their expertise in real estate matters. We conclude that the trial court properly deferred to the meaning attached to the term "Gross Income" by a majority of the arbitrators and properly entered an order in accordance with the arbitrators' understanding of the term; the appellate court erred in interposing its own determination of the meaning of "Gross [***10] Income." Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

Appellate court reversed; circuit court affirmed.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 99-7561-Civ-Zloch
Magistrate Judge Seltzer

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,
                    Plaintiff,

v.

BURNS INTERNATIONAL SECURITY             **ATTACHMENT / EXHIBIT** __1__
SERVICES CORPORATION,
formerly known as, BORG-WARNER
PROTECTIVE SERVICES CORPORATION,
a Delaware corporation,
                    Defendant.
_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
### COMPEL ARBITRATION
### AND SUPPORTING MEMORANDUM OF LAW

Plaintiff, Prestige Protective Corporation, respectfully submits this Response in

opposition to Defendant's Motion to Compel Arbitration.


1.    First and foremost, Plaintiff would show the court that an arbitration

agreement between the parties does not even exist in this case. The contract

provision upon which the Defendant relies does not contain the word "arbitration" (or

any derivation of thereof). The section of the note upon which Defendant relies is

extremely limited in its application and does not affect this action. It is well established

that a party may not be forced to submit a dispute to arbitration that the party did not

intend and agree to arbitrate. <u>Seaboard Coast LineR.R. v. Trailer Train Co.</u>, 690 F.2d

1

any compensation under the note. (Count III). The plaintiff also alleges that the note itself is unconscionable in that it allows the defendant to obtain a windfall. (Count III). In count one of the Complaint, the Plaintiff alleges that the Defendant breached the note, not the detailed report. In other words, the detailed report is merely a codification of the information supplied by the Defendant. Based upon that information alone, the report naturally supports Defendant's contention that Plaintiff was not due any compensation under the note. However, it is the information itself which is the basis of this case. Defendant would ask this court to approve of a procedure whereby a party may cheat another and then limit the complaining party to a review of only a self generated report which naturally supports that party's position.

Therefore, it is clear that Defendant's Motion to Compel Arbitration is without merit. The note clause in question applies only to disputes arising under that particular paragraph of the note. This would occur only if the parties disagreed as to the arithmetic calculations derived from the contents of the detailed report. That is not what this case is about. This case concerns the manipulation and falsification by the Defendant of the accounts which are specifically referred to and defined in a different paragraph of the note.

The clause upon which defendant relies clearly applies, by its own terms, only to that specific paragraph of the note. That is the plain and clear language of the clause in question. It requires no interpretation. However, Plaintiff would also point out that the language in question (as well as that of the entire note) was drafted by the Defendant and therefore it is axiomatic that any ambiguities in that language must be construed against the position which Defendant proposes. "Arbitration agreements are, essentially, creatures of contract." Blue Grey Corps I & II v. Merrill Lynch, etc., 921 F.2d 267, 269 (11th Cir. 1991). "The courts are not to twist the language of the contract to

3

achieve a result which is favored by federal policy but contrary to the intent of the parties". Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419-20 (11th Cir. 1990).

     2.     Plaintiff would also show that allowing this dispute to be determined by Deloitte & Touche would constitute a gross deprivation of Plaintiff's due process rights to a fair and impartial tribunal.

Defendant has neglected to inform the Court that it has maintained, and continues to maintain, a long and a significant business relationship with Deloitte & Touche. To allow a dispute between the parties to be determined by this entity would clearly raise the specter of impropriety. The leading case on this issue is Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301.

> These provisions show a desire of Congress to provide not merely for *any* arbitration but for an impartial one... we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators then judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review...
> This rule of arbitration and this cannon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

4

See also: <u>Middlesex Mutual Insurance Co. v. Levine</u>, 675 F.2d 1197, 1200 (11th Cir.

1982); <u>Olson v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 51 F.2d 157 (8th Cir. 1995);

<u>International Insurance Co. v. Schreger</u>, 593 So.2d 1196 (Fla. Ct. App. 1992); <u>Freeport</u>

<u>Construction Co. v. Star Forge Inc.</u>, 378 N.E.2d 558 (Ill. Ct. App. 1978).

Therefore, it would be contrary to law and justice to permit this dispute to be

determined by an entity with whom the Defendant has maintained a long and profitable

business relationship.  Clearly there is at the least the appearance of bias. This bias is

made even more evident by the fact that the Defendant made neither the Plaintiff, at

the time of contracting, nor this Court, through its Motion to Compel Arbitration, aware

of its relationship with Deloitte & Touche. See, <u>Olson</u>, supra.


3.      The contract provision in question provides absolutely no guidance or

instructions as to how any proposed "arbitration" should proceed. The Defendant's

Motion to Compel Arbitration , page four, states that its motion is brought pursuant to

the Federal Arbitration Act and the Illinois Uniform Arbitration Act. However, the

contract at issue does not give the Defendant the unilateral right to determine under

what act, code, or guidelines any arbitration must proceed.  The Plaintiff need not and

does not agree with Defendant's selection of arbitration proceedings.  Since the

contract is silent as to this essential point, an arbitration requirement, even if one did

exist, is unenforceable. While parties to an arbitration agreement are free to select their

own method and procedures, they still must agree on <u>something</u>. See, <u>Davis v.</u>

<u>Prudential Securities Inc.</u>, 59 F.3d 1186 (11th Cir 1995).  This is another ambiguity

which is attributable to the Defendant as the drafter of the document in question.


4.      Finally, Plaintiff would show that the Defendant has waived any right to

compel arbitration. The note provision in question states that "in the event that the parties cannot resolve any disagreement as to any amount(s) due under this paragraph within a reasonable of time, such amounts will be determined by Deloitte & Touche". As the attachments to Defendant's Motion to Compel Arbitration show, Borg-Warner (Burns' predecessor) notified the Plaintiff through a letter dated July 20, 1999 that no payment was going to be made under the note. On July 26, 1999, this counsel demanded that Borg-Warner furnish the Plaintiff with "copies of all your account documents pertaining to the calculations called for pursuant to the promissory note. This must include account records for all applicable customers for the twelve month period commencing July, 1998 through June, 1999 and any other documents upon which you relied upon in determining the amount payable under the note". This information was requested to be provided within ten days (due to a typographical error, the letter states "please provide me with these items within <u>then</u> days"). The letter was obviously received by the Defendant.

Defendant has never complied with this request, and to the present date has not provided <u>any</u> of the documents which Plaintiff requested. Defendant did not then request that the issue be submitted to arbitration. Since the Defendant ignored Plaintiffs legitimate requests, Plaintiff was forced to file suit against the Defendant, and did so on November 3, 1999. This was more than two months after Plaintiff's counsel's letter to Defendant of July 26, 1999, demanding the requested materials. It was only after the suit was filed that Defendant, for the first time, sought arbitration. Defendant clearly violated that provision of the note which requires that a disagreement exist beyond a reasonable time before the subject paragraph became effective. By denying Plaintiff access to the subject documents Defendant made it impossible for the parties to attempt a resolution of their dispute. Defendant should not now be heard to demand

arbitration since it was Defendant's conduct which required Plaintiff to initiate these proceedings.

Further, the paragraph at issue clearly requires an that an attempt to be made by the parties to "resolve any disagreement". This is a condition precedent to the ability of either party to seek "arbitration" under that paragraph. This is a condition which Defendant never met. Defendant not only never attempted any resolution of this conflict, but it prevented Plaintiff's ability to do so by refusing to supply the documents and materials requested by Plaintiff.

The court should find that the Defendant is not entitled to compel arbitration because of Defendant's failure to comply with the condition precedent of attempting to resolve the parties disagreement. In the alternative, the court should find that the Defendant has abandoned any right to arbitration by virtue of Defendant's failure to attempt to resolve the disagreement as required by the parties contract (note).

Wherefore, Plaintiff respectfully requests that Defendant's Motion to Compel Arbitration be denied.

Respectfully submitted,

ROBERT PASIN
Attorney for the Plaintiff
3300 University Drive, Suite 601
Coral Springs, Florida 33065
954-345-0662
954-345-3902 (fax)
Florida Bar No. 341312

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished by mail and fax on this /3ʳᵈ day of December, 1999, to Sherryl Martens Dunaj, of Martens Dunaj, Marlowe, Davis & Marlowe, 201 South Biscayne Blvd., Miami Center suite 880, Miami, Florida, 33131.

ROBERT PASIN

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY,
FLORIDA

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,
   Plaintiff,

v.           Case No. 99-18826 (14)

BURNS INTERNATIONAL SECURITY
SERVICES CORP., a foreign corporation,
formally known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a foreign corporation,
   Defendant.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND SUPPORTING MEMORANDUM OF LAW

   Plaintiff, Prestige Protective Corporation, respectfully submits this Response in opposition to Defendant's Motion to Compel Arbitration.

   1.  First and foremost, Plaintiff would show the court that an arbitration agreement between the parties does not even exist in this case. The contract provision upon which the Defendant relies does not contain the word "arbitration" (or any derivation of thereof). The section of the note upon which Defendant relies is extremely limited in its application and does not affect this action. It is well established that a party may not be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate. Seaboard Coast LineR.R. v. Trailer Train Co., 690 F.2d 1343, 1352, (11th Cir. 1982); Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563, 1567, (11th Cir.), cert. denied,

__ U.S. __, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994). (The Seaboard case was cited with approval by the Florida Supreme Court in its recent comprehensive opinion regarding arbitration agreements of Seifert v. U.S. Home Corp., 24 F.L.W. S540, (Fla., Nov. 18, 1999).

In the present case, the note paragraph at issue states:

> Buyer shall prepare and deliver to Seller a reasonably
> detailed report computing the Account Revenues,
> the Customer Retention Percentage and the principal
> amount of any payment due hereunder. Within five
> days after delivery of such report, Seller shall notify
> buyer of its concurrence to such determination or
> its disagreement with such determinations. In the
> event that the parties can not resolve any disagreement
> as to any amount(s) due under this paragraph within
> a reasonable period of time, such amounts will be
> determined by Deloitte & Touche whose fees and
> expenses will be paid by the non-prevailing party
> and whose determination will be final and binding.

It is pivotal to recognize the qualifying language, "under this paragraph", of the above passage. Importantly, it does not state "under this note". Upon reading the paragraph in question it is clear that the paragraph pertains only to a dispute regarding the interpretation or construction of the "reasonably detailed report" which defendant was obligated to provide. It does not apply to the other provisions of the note, which are the crux of the four counts of Plaintiff's complaint. Those counts are directed not to the "detailed report" but to the accounts themselves and how they were manipulated of falsified before the report was even prepared. Plaintiff alleges, among other things, that the Defendant committed fraud by manipulating the accounts in such a fashion as to make it appear that the account revenues in question were less than they actually were. (Count II). The Plaintiff also alleges that the Defendant purposefully failed to collect accounts that were otherwise collectible in an effort to cause the revenues in question

2

to be sufficiently low so that the Plaintiff would not be entitled to any compensation under the note. (Count III). The plaintiff also alleges that the note itself is unconscionable in that it allows the defendant to obtain a windfall. (Count III).

In count one of the Complaint, the Plaintiff alleges that the Defendant breached the note, not the detailed report. In other words, the detailed report is merely a compilation of the information supplied by the Defendant. Based upon that information alone, the report naturally supports Defendant's contention that Plaintiff was not due any compensation under the note. However, it is the information itself which is the basis of this case. Defendant would ask this court to approve of a procedure whereby a party may cheat another and then limit the complaining party to a review of only a self generated report which naturally supports that party's position.

Therefore, it is clear that Defendant's Motion to Compel Arbitration is without merit. The note clause in question applies only to disputes arising under that particular paragraph of the note. This would occur only if the parties disagreed as to the arithmetic calculations derived from the contents of the detailed report. That is not what this case is about. This case concerns the manipulation and falsification by the Defendant of the accounts which are specifically referred to and defined in a different paragraph of the note.

The clause upon which defendant relies clearly applies, by its own terms, only to that specific paragraph of the note. That is the plain and clear language of the clause in question. It requires no interpretation. However, Plaintiff would also point out that the language in question (as well as that of the entire note) was drafted by the Defendant and therefore it is axiomatic that any ambiguities in that language must be construed against the position which Defendant proposes. "Arbitration agreements are, essentially, creatures of contract." Blue Grey Corps I & II v. Merrill Lynch, etc., 921 F.2d

267, 269 (11th Cir. 1991). "The courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties". Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419-20 (11th Cir. 1990).

    2.    Plaintiff would also show that allowing this dispute to be determined by Deloitte & Touche would constitute a gross deprivation of Plaintiff's due process rights to a fair and impartial tribunal.

Defendant has neglected to inform the Court that it has maintained, and continues to maintain, a long and a significant business relationship with Deloitte & Touche.  To allow a dispute between the parties to be determined by this entity would clearly raise the specter of impropriety. The leading case on this issue is Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968).

> These provisions show a desire of Congress to provide not merely for *any* arbitration but for an impartial one... we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators then judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review...
> This rule of arbitration and this cannon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias.  We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

See also: <u>Middlesex Mutual Insurance Co. v. Levine</u>, 675 F.2d 1197, 1200 (11th Cir.

1982); <u>Olson v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 51 F.2d 157 (8th Cir. 1995);

<u>International Insurance Co. v. Schreger</u>, 593 So.2d 1196 (Fla. Ct. App. 1992); <u>Freeport</u>

<u>Construction Co. v. Star Forge Inc.</u>, 378 N.E.2d 558 (Ill. Ct. App. 1978).

Therefore, it would be contrary to law and justice to permit this dispute to be determined by an entity with whom the Defendant has maintained a long and profitable business relationship. Clearly there is at the least the appearance of bias. This bias is made even more evident by the fact that the Defendant made neither the Plaintiff, at the time of contracting, nor this Court, through its Motion to Compel Arbitration, aware of its relationship with Deloitte & Touche. See, <u>Olson</u>, supra.


3.    The contract provision in question provides absolutely no guidance or instructions as to how any proposed "arbitration" should proceed. The Defendant's Motion to Compel Arbitration , page four, states that its motion is brought pursuant to the Federal Arbitration Act and the Illinois Uniform Arbitration Act. However, the contract at issue does not give the Defendant the unilateral right to determine under what act, code, or guidelines any arbitration must proceed. The Plaintiff need not and does not agree with Defendant's selection of arbitration proceedings. Since the contract is silent as to this essential point, an arbitration requirement, even if one did exist, is unenforceable. While parties to an arbitration agreement are free to select their own method and procedures, they still must agree on <u>something</u>. See, <u>Davis v.</u> <u>Prudential Securities Inc.</u>, 59 F.3d 1186 (11th Cir 1995). This is another ambiguity which is attributable to the Defendant as the drafter of the document in question.

5

4.      Finally, Plaintiff would show that the Defendant has waived any right to compel arbitration. The note provision in question states that "in the event that the parties cannot resolve any disagreement as to any amount(s) due under this paragraph within a reasonable of time, such amounts will be determined by Deloitte & Touche". As the attachments to Defendant's Motion to Compel Arbitration show, Borg-Warner (Burns' predecessor) notified the Plaintiff through a letter dated July 20, 1999 that no payment was going to be made under the note. On July 26, 1999, this counsel demanded that Borg-Warner furnish the Plaintiff with "copies of all your account documents pertaining to the calculations called for pursuant to the promissory note. This must include account records for all applicable customers for the twelve month period commencing July, 1998 through June, 1999 and any other documents upon which you relied upon in determining the amount payable under the note". This information was requested to be provided within ten days (due to a typographical error, the letter states "please provide me with these items within then days"). The letter was obviously received by the Defendant.

Defendant has never complied with this request, and to the present date has not provided any of the documents which Plaintiff requested. Defendant did not then request that the issue be submitted to arbitration. Since the Defendant ignored Plaintiffs legitimate requests, Plaintiff was forced to file suit against the Defendant, and did so on November 3, 1999. This was more than two months after Plaintiff's counsel's letter to Defendant of July 26, 1999, demanding the requested materials. It was only after the suit was filed that Defendant, for the first time, sought arbitration. Defendant clearly violated that provision of the note which requires that a disagreement exist beyond a reasonable time before the subject paragraph became effective. By denying Plaintiff access to the subject documents Defendant made it impossible for the parties

6

to attempt a resolution of their dispute.  Defendant should not now be heard to demand arbitration since it was Defendant's conduct which required Plaintiff to initiate these proceedings.

Further, the paragraph at issue clearly requires an that an attempt to be made by the parties to "resolve any disagreement".  This is a condition precedent to the ability of either party to seek "arbitration" under that paragraph.  This is a condition which Defendant never met.  Defendant not only never attempted any resolution of this conflict, but it prevented Plaintiff's ability to do so by refusing to supply the documents and materials requested by Plaintiff.

The court should find that the Defendant is not entitled to compel  arbitration because of Defendant's failure to comply with the condition precedent of attempting to resolve the parties disagreement.  In the alternative, the court should find that the Defendant has abandoned any right to arbitration by virtue of Defendant's failure to attempt to resolve the disagreement as required by the parties contract (note).

Wherefore, Plaintiff respectfully requests that Defendant's Motion to Compel Arbitration be denied.

Respectfully submitted,

ROBERT PASIN
Attorney for the Plaintiff
3300 University Drive, Suite 601
Coral Springs, Florida 33065
954-345-0662
954-345-3902 (fax)
Florida Bar No. 341312

7

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been furnished by mail on this 24ᵗʰ day of January ,2000 to Sherryl Martens Dunaj, of Martens Dunaj, Marlowe, Davis & Marlowe, 201 South Biscayne Blvd., Miami Center suite 880, Miami, Florida, 33131.

ROBERT PASIN

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. 99-018826

PRESTIGE PROTECTIVE CORP.,
a Florida corporation,
         Plaintiff,

v.

BURNS INTERNATIONAL SECURITY
SERVICES CORP., a foreign corporation,
formally known as,
BORG-WARNER PROTECTIVE
SERVICES CORP., a foreign corporation,
         Defendant.
_____/



**ATTACHMENT / EXHIBIT** _____

### MOTION FOR PROTECTIVE ORDER AND TO STAY ALL
### DISCOVERY UNTIL AFTER ARBITRABILITY HAS BEEN DETERMINED

Defendant BURNS INTERNATIONAL SECURITY SERVICES CORP., a foreign corporation, formerly known as, BORG-WARNER PROTECTIVE SERVICES CORP., a foreign corporation, moves this Court for an order, pursuant to Fla.R.Civ.P. 1.280(c), staying all discovery in this case until after the arbitrability of this case has been determined by this Court, and in support thereof states the following:

On December 31, 1999, Plaintiff PRESTIGE PROTECTIVE CORPORATION served Plaintiff's First Request for Production upon Defendant BURNS. In said production request, Plaintiff PRESTIGE requests production of various documents relating to the resolution of this case.

On January 20, 2000, Defendant BURNS filed with this Court its Motion to Compel Arbitration and Dismiss Action and Reply Memorandum in Further Support of Defendant's Motion to Compel Arbitration. This motion is currently pending before the Court.

Martens Dunaj Marlowe Davis & Marlowe

CASE NO.: 99-018826

Based on the rationale of Defendant BURNS' Motion to Compel Arbitration and the fact that the parties have agreed to an alternative dispute resolution mechanism, Defendant BURNS maintains that the issues of this case are properly resolved by the parties' chosen arbitration method pursuant to the parties' agreement. Any discovery as to the issues of this case is therefore inappropriate at this time as it would tend to create an undue burden or expense.

WHEREFORE, Defendant BURNS respectfully asks that this Court enter an Order staying all discovery until after it has addressed Defendant BURNS' request to compel arbitration.

Respectfully submitted,

Sherryll Martens Dunaj
Florida Bar No.: 136707
John L. Urban
Florida Bar No.: 175307
Martens Dunaj Marlowe Davis & Marlowe
201 S. Biscayne Boulevard
Suite 880, Miami Center
Miami, Florida 33131
(305) 373-9977

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail and fax this 7th day of February, 2000 to: **Robert Pasin**, Attorney for Plaintiff, 3300 University Drive, Suite 601, Coral Springs, Florida 33065.

John L. Urban

-2-

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**00-CIV-DAVIS**

## a) PLAINTIFFS

Prestige Protective Corp.
A Florida Corporation

## DEFENDANTS

Burns International Security
Services Corporation, a Delaware Corp.

MAGISTRATE JUDGE
Brown

**b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Broward Cty
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Broward | 00 CV 6206 Davis | Brown

FILED BY FEB 10 00

**c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Robert Pasin (954) 345-0662
3300 University Dr., Suite 801
Coral Springs, FL 33065

**ATTORNEYS (IF KNOWN)**
Martens Dunaj & Marlowe
201 S. Biscayne Blvd., Suite 850
Miami, FL 33131

136707

**d) CIRCLE COUNTY WHERE ACTION AROSE:**  Sherryll Martens Dunaj
DADE, MONROE, (BROWARD) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is an action for recovery on a primary note, and falls under the Court's 28 U.S.C. § 1332 diversity jurisdiction.

a.     days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

**DEMAND $** $300,000

Check YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

#99-7561-CIV-ZLOCH   JUDGE ZLOCH   DOCKET NUMBER 99-7561-CIV

DATE 2/09/00

SIGNATURE OF ATTORNEY OF RECORD
Sherryll Martens Dunaj

**FOR OFFICE USE ONLY:** Receipt No. 816838   Amount: 156.00

UNITED STATES DISTRICT COURT
I-2